UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MUCHMORE'S CAFE, LLC,                                              Civil Action No. 14-cv-5668 RRM-RER

                Plaintiff,

    -against-                                                                       **AMENDED COMPLAINT**

CITY OF NEW YORK,

                Defendant.                                         Jury trial demanded.
-----------------------------------------------------------X

        Muchmore's Cafe, LLC d/b/a Muchmore's, as and for its Amended Complaint herein, alleges the following:

## Introduction

1. The instant action presents both a facial and as-applied challenge to the constitutionality of the New York City Cabaret Law, N.Y.C. Administrative Code 20-359, *et. seq.* ("the Cabaret Law"), under the First and Fourteenth Amendments to the United States Constitution. This action seeks declaratory and injunctive relief, declaring the Cabaret Law to be unconstitutional, and enjoining further enforcement to the extent it is declared unconstitutional.

## Jurisdiction

2. This Court has subject matter jurisdiction of this dispute pursuant to 28 U.S.C. Sec. 1331 and 1343(3) and (4), as this actions concerns rights afforded under the United States Constitution and Civil Rights Act of 1871. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. 2201 and 2202 and Fed. R. Civ. Proc. 57.

## Venue

3. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. 1391(b)(2) on the basis that a substantial part of the events or omissions giving rise to the claim occurred in Kings County, New York.

## Parties

4. Plaintiff Muchmore's Cafe, LLC d/b/a Muchmore's ("Muchmore's") is a domestic limited liability company organized and existing under the laws of the State of New York, with its principal place of business located at 2 Havemeyer Street, 1st Floor, Brooklyn, New York.

5. Defendant City of New York is a municipal corporation organized and existing under the laws of the State of New York and the New York City Charter.

## General Provisions of the Cabaret Law

6. The Cabaret Law law defines a "public dance hall" as "[a]ny room, place or space in the city in which dancing is carried on and to which the public may gain admission, either with or without the payment of a fee." N.Y.C. Admin. Code Sec. 20-359.

7. The Cabaret Law defines a "cabaret" as "[a]ny room, place or space in the city in which any musical entertainment, singing, dancing or other form of amusement is permitted in connection with the restaurant business or the business of directly or indirectly selling to the public food or drink, except eating or drinking places, which provide incidental musical entertainment, without dancing, either by mechanical devices, or by not more than three persons." N.Y.C. Admin Code Sec. 20-359.

8. In its definitions section, N.Y.C. Admin. Code 20-359, the Cabaret Law provides no definition for the term, "dancing".

9. The Cabaret Law provides that, "[i]t shall be unlawful for any person to conduct, maintain or operate, or engage in the business of conducting, maintaining or operating, a public dance hall, cabaret or catering establishment unless the premises wherein the same is conducted, maintained or operated are licensed in the manner prescribed herein." N.Y.C. Admin. Code Sec. 20-360.

10. The Cabaret Law provides certain record keeping requirements with respect to

security personnel employed at a "public dance hall" or "cabaret" as defined in the Cabaret Law. N.Y.C. Admin Code. Sec. 20-360.1.

11. The Cabaret Law, at N.Y.C. Admin Code 20-360.2, provides detailed and onerous surveillance and record keeping requirements concerning video recording apparatuses for any "public dance hall" or "cabaret" as defined in the Cabaret Law, provided that such establishment does not qualify as a "restaurant" as defined under Section 3 of the New York State Alcoholic Beverage Control Law. Specifically, it requires that "all entrances and exits used by patrons are equipped with digital video surveillance cameras"; that such "cameras shall be digital in nature and shall be of sufficient number, type, placement and location to view and record all activity in front of and within 15 feet of either side of each entrance or exit"; that such cameras "shall be sufficiently light sensitive and provide sufficient image resolution (supported by additional lighting if necessary) to produce easily discernible images recorded at all times"; that such cameras "shall record at a minimum speed of fifteen frames per second"; that the resulting images "shall be capable of being viewed through use of appropriate technology"; that such cameras "shall be capable of transferring the recorded images to a portable form of media"; that such cameras "shall not have an audio capability"; that such cameras shall be "recording continuously during all hours of operation of the cabaret or public dance hall and for two hours after the cabaret or public dance hall closes"; that the resulting recordings "shall be indexed by dates and times and preserved for a minimum of thirty days"; that the resulting recordings "shall be stored in a locked receptacle located in a controlled access area, to which only authorized personnel have access"; that "[a]ll personnel authorized to access such video recordings must certify in writing that they have been informed on the appropriate use and retention of recordings as set forth in [the Cabaret Law], and on the legal issues associated with video surveillance and the use and retention of recording"; that "the cabaret or public dance hall shall keep a log of all

instances of requests for, access to, dissemination and use of, recorded materials made by" such cameras; that "copies of the certifications by authorized employees and of the access log shall be provided to [the Defendant] in accordance with its rules"; that the "use or dissemination of recordings made by video surveillance cameras installed and maintained pursuant to [the Cabaret Law] in violation of the penal law or section 50 of the civil rights law shall result in suspension or revocation of a license and a fine of not less than $5,000 nor more than $50,000"; that a "cabaret or public dance hall shall post signage at appropriate locations, as determined by rule of the commissioner, to notify the public of its use of video surveillance equipment and the locations of video surveillance equipment"; that the Defendant "shall conduct periodic inspections of licensees to ensure compliance with the use and retention policies"; and that the Defendant "may suspend or revoke a cabaret or public dance hall license if the licensee violates the requirements of this section and, in addition, shall impose a fine of $1,000 for each violation..."

12. The Cabaret Law limits the issuance of licenses to premises zoned for "Use Group 12", defined under N.Y.C. Zoning Resolution 32-21 as "fairly large entertainment facilities that: (1) have a wide service area and generate considerable pedestrian, automotive or truck traffic; and (2) are, therefore, appropriate only in secondary, major or central commercial areas".

13. In order for an eating or drinking establishment to obtain a license under the Cabaret Law, it must go through an extensive application and vetting process, submitting detailed information about the owners of the establishment, the building in which the establishment is located, and compliance with an extensive array of applicable health, fire, buildings, zoning, water, gas and electricity safety laws and regulations.

14. In order for an eating or drinking establishment to obtain a license under the Cabaret Law, it must first seek approvals from from the New York City Department of Consumer

Affairs, the Fire Department, the Department of Buildings and the local Community Board.

15. In order for an eating or drinking establishment to obtain a license under the Cabaret Law, it must pay a license fee every two years, which varies based upon the establishment's capacity, beginning at $600 for establishments with a capacity of not more than 74 persons.

## General History and Impact of the Cabaret Law

16. The Cabaret Law was passed in 1926, at the height of the Harlem Renaissance. It originally required that all musicians performing in New York City "must be of good character". Until 1967, the Cabaret Law required all workers, including musicians, to obtain a New York City Cabaret Identification Card, and the loss of such a card could mean the loss of a musician's livelihood. Well known musicians such as Chet Baker, Charlie Parker, Billie Holiday and Thelonious Monk had their rights to perform music suspended and/or revoked under the Cabaret Law due to alleged imperfections of character.

17. In 1926, in recommending approval of the Cabaret Law, the Committee on Local Laws reported, "These night clubs are simply dance halls, where food is served at exorbitant prices to the tune of jazz and tabloid entertainments. A very frank opposition was voiced by one of the licensees, on the ground that when strangers came to New York City they wanted to 'run wild.' Well, there has been altogether too much running 'wild' in some of these night clubs and, in the judgment of your Committee, the 'wild' stranger and the foolish native should have the check-rein applied a little bit... Your Committee believes that these 'wild' people should not be tumbling out of these resorts at six or seven o'clock in the morning to the scandal and annoyance of decent residents on their way to daily employment." Proceedings of Bd. of Aldermen & Mun. Assembly of City of New York, Recommendation No. 10, Dec. 7, 1926, at 572.

18. In the context of the 1926 approval of the Cabaret Law, the coded language

quoted above and other statements and public records from the time of the Cabaret Law's enactment, are indicative of the racially discriminatory intent behind the enactment of the Cabaret Law, specifically, a desire to curb inter-racial mingling and inter-racial dancing in 1920's Harlem jazz clubs and elsewhere throughout the City of New York.

19. The discriminatory intent behind the Cabaret Law is further demonstrated through the Cabaret Law's original language prohibiting musical instruments commonly used in jazz music, including wind, brass and percussion instruments, and exempting instruments commonly use by white musicians, including piano, organ, accordion, guitar and stringed instruments.

20. To this day, the Cabaret Law continues to have a racially discriminatory impact, in that genres of music which are primarily performed by minority musicians, such as hip hop, salsa or merengue, are effectively rendered unlawful in more than 99% of the eating or drinking establishment in the City of New York, while genres of music that are primarily performed by white musicians, such as classical, rock or opera, are not similarly impacted.

21. Under the plaint text of the Cabaret Law, churches that allow dancing on the part of church goers as a part of a religious celebration, ballet studios, ball rooms, fraternities, high schools hosting proms, and private individuals hosting parties in their homes, could all be found in violation the Cabaret Law's prohibition against the operation of a "public dance hall" as expansively defined under N.Y.C. Admin. Code 20-359.

22. For many years leading up to the election of Mayor Rudolph Giuliani, the Cabaret Law was not regularly enforced.

23. Since the election of Rudolph Giuliani, the Cabaret Law has been enforced haphazardly, unpredictably, unequally and arbitrarily, affording police officers broad discretion to crack down on specific eating or drinking establishments without warning for activities that are generally tolerated in similarly situated establishments across the City of New York.

24.  There are more than twenty five thousand eating and drinking establishments in the City of New York. Of these, less than 1% currently hold a valid license under the Cabaret Law.

25.  To the extent the Cabaret Law purports to or is intended to address issues of excessive noise, it is merely duplicative, as these issues are thoroughly regulated under the New York City Noise Code.

26.  To the extent the Cabaret Law purports to or is intended to address issues of overcrowding or building safety, it is merely duplicative, as these issues are thoroughly regulated under the New York City Building Code, New York City Fire Code, New York City Electrical Code and New York City requirements concerning Place of Assembly Certificates of Operation.

27.  To the extent the Cabaret Law purports to or is intended to address issues of unlawful conduct on the part of establishment operators, it is merely duplicative, as these issues are thoroughly regulated under the New York State Alcoholic Beverage Control Law.

28.  The only practical effect of the Cabaret Law is to prohibit dancing or the playing or performance of music that might lead to dancing in more than 99% of the eating and drinking establishments in the City of New York, as well as any other "room, place or space in the city in which dancing is carried on and to which the public may gain admission".

29.  The zoning restrictions under the Cabaret Law make it impossible to obtain a license in any eating or drinking establishment located in a C1, C2 or C3 zoning district, where a majority of New York City's eating and drinking establishments are located.

30.  By requiring any "individual, corporation, club, partnership, association, society or any other organized group of persons" to obtain a license prior to allowing dancing or the playing or performance of genres of music that might lead to dancing, the Cabaret Law serves as a content-based prior restraint on protected First Amendment expression.

31. By requiring any "individual, corporation, club, partnership, association, society or any other organized group of persons" to obtain a license prior to allowing dancing, or the playing or performance of music that might lead to dancing, without being narrowly tailored to serve a significant governmental interest, the Cabaret Law is unconstitutionally overbroad.

32. By failing to define "dancing" in a way that would allow a reasonable person to distinguish between unlawful dancing and ostensibly lawful conduct such as swaying or head nodding, the Cabaret Law is unconstitutionally vague.

33. To the extent that racial discrimination was a substantial or motivating factor behind the enactment of the Cabaret Law, and it continues to have a racially discriminatory impact to this day, it denies equal protection under the law.

34. To the extent the Cabaret Law treats similarly situated establishments differently, in that establishments with similar capacities and levels of sound emission are treated differently based upon whether they allow dancing or certain genres of music, it denies equal protection under the law.

35. At all times relevant hereto, in enforcing the Cabaret Law, Defendant was acting under color of state and/or municipal law.

36. At all times relevant hereto, in enforcing the Cabaret Law, Defendant knew or should have known that its actions violated the Constitution and laws of the United States.

### Prior Challenges to the Constitutionality of the Cabaret Law

37. The Cabaret Law has been subject to a number of challenges to its constitutionality, some of which were successful and some of which were not.

38. In *Merco Properties, Inc. v. Guggenheimer*, 395 F. Supp. 1322 (S.D.N.Y., 1975), the Court found that the Cabaret Law was not unconstitutionally vague or overbroad in the character requirements it imposed upon applicants for cabaret licenses.

39. In *Chiasson v. New York City Dept. of Consumer Affairs*, 505 N.Y.S.2d 499, 132 Misc.2d 640 (Sup. Ct. N.Y. Co. 1986), the Cabaret Law was challenged on the basis that, "it excludes wind, brass and percussionist instrumentalists and limits the players to three", while permitting piano, organ, accordion, guitar and stringed instruments, thereby depriving jazz musicians of due process and equal protection of the laws. The Court found the limitation upon the types of permitted musical instruments to be unconstitutional, but did not strike down the Cabaret Law's limitation on the number of musicians.

40. In *Chiasson v. New York City Dept. of Consumer Affairs*, 524 N.Y.S.2d 649, 138 Misc.2d 394 (Sup. Ct., N.Y. Co. 1988), the Court expanded this holding to find the limitation on the number of musicians unconstitutional.

41. In *Festa v. New York City Dept. of Consumer Affairs*, 820 N.Y.S.2d 452, 12 Misc.3d 466 (Sup. Ct., N.Y. Co. 2006), *affd. Festa v. New York City Department of Consumer Affairs*, 37 A.D.3d 343, 830 N.Y.S.2d 133 (1st Dept. 2007), the Court upheld the constitutionality of the Cabaret Law as applied to social dancing, but indicated in dicta that the holding would likely not apply as to dance performance.

## Applicability of the Cabaret Law to Plaintiff

42. Muchmore's is a cafe and bar located in Williamsburg, Brooklyn, which hosts original live music, stand up comedy, theater, art openings, debates, lectures and other forms of entertainment.

43. Muchmore's is licensed by the State of New York to serve beer and wine and to collect sales tax, and by the City of New York to operate as a Food Service Establishment.

44. Muchmore's currently prohibits dancing, and takes measures to avoid dancing on its premises, primarily by refusing to allow performances that involve dancing or would tend to elicit dancing on the part of its patrons. In particular, Muchmore's avoids hosting dance-oriented

genres of music, such as hip hop, salsa or merengue, and instead limits musical entertainment to folk music, rock music, experimental electronic music, jazz and other music forms that are not conducive to dancing. Muchmore's also avoids hosting disc jockeys or playing pre-recorded music that would tend to elicit dancing.

45. In or about the first half of 2013, Muchmore's and/or its owner received a citation for alleged unlawful dancing on its premises in violation of the Cabaret Law. While this citation was ultimately dismissed on technical grounds due to a defect on the face of the summons, it has caused Muchmore's to experience reasonable concern that it could be subject to penalties under the Cabaret Law in the future, even if it takes reasonable measures to avoid dancing on the part of its customers.

46. On the night that Muchmore's received a citation under the Cabaret Law, it was not hosting dance-oriented music. Given the uncertain line between swaying and dancing, it is difficult for Muchmore's to know precisely what conduct is prohibited, or when it is legally required to intervene if a customer is swaying or head nodding, but not clearly dancing.

46. To the extent that the Cabaret Law prevents Muchmore's from hosting or playing genres of music that might lead to dancing by its patrons, it unduly interferes with the First Amendment and Fourteenth Amendment rights of Muchmore's, the musicians that perform at Muchmore's or that would be permitted to perform at Muchmore's but for the Cabaret Law, and the customers of Muchmore's.

47. To the extent that the Cabaret Law prevents Muchmore's from hosting dance performance, it unduly interferes with the First Amendment and Fourteenth Amendment rights of Muchmore's, the musicians that perform at Muchmore's, the musicians and dancers that would be permitted to perform at Muchmore's but for the Cabaret Law, and the customers of Muchmore's.

48. To the extent that the Cabaret Law prevents Muchmore's from hosting dance

performance and/or genres of music that might lead to dancing by Muchmore's patrons, it is not the least restrictive means of achieving a compelling governmental interest, is not narrowly tailored to serve a significant governmental interest, and is not rationally related to any legitimate governmental interest.

49. To date, Muchmore's, like more than 99% of the eating and drinking establishments in the City of New York - essentially all of the eating and drinking establishments that do not operate as strip clubs or dance clubs - has not applied for or received a license under the Cabaret Law on the basis that it does not qualify as a "cabaret" or "public dance hall" under the definition provided thereunder and interpreting case law, and that the substantial time and cost required to obtain and maintain such a license would not be justified by any increase in revenue which could be expected from hosting dance performance or allowing dancing on the part of its customers.

50. Muchmore's is representative of a typical eating or drinking establishment in the City of New York, in that as a result of the Cabaret Law, it is unable to permit dance performance or social dancing on the part of its customers, or to play or host music that might lead to dancing.

51. Notwithstanding the foregoing, Muchmore's would host dance performance, would permit social dancing by its patrons, and would host forms of music that might lead to dancing, but for the prohibitions of the Cabaret Law, and seeks declaratory judgment establishing that the Cabaret Law is unconstitutional on its face and/or as applied to Muchmore's and similarly situated establishments, and enjoining its enforcement to the extent it is declared unconstitutional.

## AS AND FOR A FIRST CAUSE OF ACTION
## (DANCE PERFORMANCE)

52. Plaintiff repeats and realleges the allegations above with the same force and effect

as if set forth at length herein.

53. To the extent the Cabaret Law purports to prohibit Muchmore's and similar establishments from hosting dance performance, or to prohibit dancers from performing, it violates of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Sec. 1983, in that it unduly abridges freedom of speech and the right of people to peacefully assemble, and denies Muchmore's, performers and prospective performers at Muchmore's and/or patrons of Muchmore's due process of law and equal protection under the law.

54. As a result of the foregoing, Plaintiff requests declaratory judgment establishing that the Cabaret Law is unconstitutional on its face and/or as applied to Muchmore's and similarly situated establishments, and enjoining its enforcement to the extent it is declared to be unconstitutional.

## AS AND FOR A SECOND CAUSE OF ACTION

### (SOCIAL DANCING)

55. Plaintiff repeats and realleges the allegations above with the same force and effect as if set forth at length herein.

56. To the extent the Cabaret Law purports to prohibit social dancing and/or require Muchmore's and similarly situated establishments to prohibit social dancing by their patrons, and prevents Muchmore's and similarly situated establishments from hosting genres of music that might lead to dancing, it violates the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Sec. 1983, in that it unduly abridges freedom of speech and the right of people to peacefully assemble, and denies Muchmore's, performers and prospective performers at Muchmore's and/or patrons of Muchmore's due process of law and equal protection under the law.

57. To the extent that certain prior precedents have failed and/or refused to extend

constitutional protections to social dancing, Plaintiff respectfully requests that this Court differentiate, modify, reverse and/or reconsider such precedents on the basis of factual differences, intervening changes in case law, intervening changes in social norms and customs, the applicability of other precedents concerning the First and Fourteenth Amendments to the United States Constitution, and on the basis of such other and further legal arguments as may be advanced by Plaintiff during the pendency of this action.

58. As a result of the foregoing, Plaintiff requests declaratory judgment establishing that the Cabaret Law is unconstitutional on its face and/or as applied to Muchmore's and similarly situated establishments, and enjoining its enforcement to the extent it is declared to be unconstitutional.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff Muchmore's Cafe, LLC respectfully requests that this Court issue an Order declaring the New York City Cabaret Law unconstitutional on its face and/or as applied, and to the extent it is found to be unconstitutional, enjoining its enforcement, granting reasonable attorney's fees and costs pursuant to 42 U.S.C. Sec. 1988 and/or 42 U.S.C. Sec. 1920, and granting such other and further relief as the Court deems just, proper and equitable.

Dated: Brooklyn, New York
       October 27, 2014

                                       **LAW OFFICE OF ANDREW MUCHMORE**
                                       Counsel for Plaintiff

                                       By: _/s/ Andrew Muchmore_____
                                            Andrew Muchmore
                                       217 Havemeyer Street, 4th Floor
                                       Brooklyn, New York 11211
                                       amuchmore@muchmorelaw.com
                                       (917) 932-0299