# LOCAL LAWS
## OF
## THE CITY OF NEW YORK
### FOR THE YEAR 2005

---

### No. 113

---

Introduced by Council Members Gennaro, Avella, Comrie, Fidler, Jackson, Provenzano, Recchia, Weprin, Liu, Addabbo Jr. and The Public Advocate (Ms. Gotbaum) (by request of the Mayor).  Passed under a Mayor's Message of Necessity.

## A LOCAL LAW

**To amend the administrative code of the city of New York, in relation to the noise control code and the repeal of subchapters 4, 5 and 6 of chapter 2 of title 24 of such code.**

*Be it enacted by the Council as follows:*

Section 1.  Section 24-202 of the administrative code of the city of New York, as amended by local law number 22 for the year 2002, is amended to read as follows:

§24-202 Declaration of policy.  It is hereby declared to be the public policy of the city to reduce the ambient [noise] *sound* level in the city, so as to preserve, protect and promote the public health, safety and welfare, and the peace and quiet of the inhabitants of the city, prevent injury to human, plant and animal life and property, foster the convenience and comfort of its inhabitants, and facilitate the enjoyment of the natural attractions of the city. It is the public policy of the city that every person is entitled to ambient [noise] *sound* levels that are not detrimental to life, health and enjoyment of his or her property. It is hereby declared that the making, creation or maintenance of excessive and unreasonable noises within the city affects and is a menace to public health, comfort, convenience, safety, welfare and the prosperity of the people of the city. For the purpose of controlling and reducing such noises, it is hereby declared to be the policy of the city to set the unreasonable *and prohibited* noise standards and decibel levels contained herein and to consolidate certain of its noise control legislation into this code. The necessity for legislation by enactment of the provisions of this chapter is hereby declared as matter of legislative determination.

This code shall be liberally construed so as to effectuate the purposes described in this section. Nothing herein shall be construed to abridge the emergency powers of the board of health or the right of the department of health and mental hygiene to engage in any of its necessary or proper activities. [Nothing herein shall abridge the powers and responsibilities of the] *It is the intent of the council that the* police department [to] *as well as other agencies of the city designated by the commissioner of the department of environmental protection shall have the authority to* enforce the provisions of this code *and police officers and designated employees of the department of environmental*

2

*protection and of such other city agencies shall have the power to issue summonses, appearance tickets and notices of violation for violations of this code.*

§2.  Section 24-203 of such code is amended to read as follows:

§24-203   General definitions.  When used in the New York city noise control code *the following terms shall have the following meanings*:

[(a)] *(1)*  "A" level means the [total] sound level [of all noise] as measured with a sound level meter using the "A" weighting network. The unit of measurement is the [db(A)] *dB(A). This frequency weighting network for the measurement of sound levels shall comply with standards established by the American National Standards Institute specifications for sound level meters S1.4-1971, as amended or S1.4-1983, as amended.*

[(b)] *(2)*  Activity means any act or combination of acts which actually results in the production of sound.

[(c)] *(3)*  Air compressor means a device which draws in air or gas, compresses it, and delivers it at a higher pressure.

[(d)  Aircraft means any device that is used or intended to be used for flight in the air but does not include any such device used only in the service of a government or political subdivision thereof unless such device is engaged in carrying persons or property for commercial purposes. Aircraft includes but is not limited to:

    1.  subsonic transport aircraft;

    2.  subsonic turbojet-powered aircraft;

    3.  aircraft capable of flying at supersonic speeds;

    4.  rotocraft;

    5.  vertical take-off and landing aircraft (VTOL aircraft);

    6.  short take-off and landing aircraft (STOL aircraft); and

    7.  aircraft capable of landing or taking off on water.]

[(e)] *(4)* Air horn means a device intended to produce a sound signal by means of compressed air or gas or exhaust gas.

[(f)] *(5)* Airport means an area of land or water that is used or intended to be used for the landing and take off of aircraft, and includes its buildings and facilities, if any.

[(g)] *(6)* Ambient [noise] *sound* means [the all-encompassing noise associated with a given environment, being usually a composite of sounds from many sources near and far] *the sound level at a given location that exists as a result of the combined contribution in that location of all sound sources, excluding the contribution of a source or sources under investigation for violation of this code and excluding the contribution of extraneous sound sources.  For purposes of the enforcement of this code, the ambient sound level of a given location may be determined based upon measurements taken at a comparable site (which includes but is not limited to comparable physical locations and time of day) in the nearby area.*

[(h)] *(7)* Apparatus means any mechanism which prevents, controls, detects, measures or records the production of sound.

*(8)  Audible status indicator means any sound reproduction device on a motor vehicle that emits or causes to be emitted any continuous or near continuous sound (exceeding 5 seconds if tonal in nature or any duration if verbal in nature) for the purpose of warning that an audible burglar alarm has been installed on such motor vehicle amd is operational or for creating the appearance that such an alarm has been installed on such motor vehicle and is operational.*

[(i)] *(9)* Authorized emergency vehicle means [every ambulance and every vehicle operated by a police department, fire department, fire patrol, chief or assistant chief of a fire department, county or deputy county fire coordinator, county or assistant county fire

3

marshal, sheriff, or by a chief, assistant chief or deputy chief of a police department, a regular paid deputy sheriff or a motor vehicle of the New York city housing authority when engaged in the performance of duty as a peace officer, or by an authorized public utility company when on emergency calls, every state-owned vehicle operated by a law enforcement officer of the conservation department when engaged in performance of duty in enforcement of the environmental conservation law, and every vehicle operated by a bridge authority or bridge and tunnel authority when on emergency calls] *an authorized emergency vehicle as defined by section 101 of the vehicle and traffic law.*

[(j)] *(10)* Board means the environmental control board of the city of New York.

[(k)] *(11)* Building means a building as defined in [article two of subchapter two of chapter one of title twenty-seven of the code] *section 27-232 of the administrative code.*

[(l)] *(12)* Building aperture means any designed opening in a building to which a person may reasonably have access including but not limited to any door, gate, window, skylight or hatch.

[(m)] *(13)* Burglar alarm means any sound signal device designed and intended to produce a sound signal upon unauthorized entrance by a person into a building or motor vehicle.

[(n)] *(14)* "C" level means the [total] sound level [of all noise] as measured with a sound level meter using the "C" weighting network. The unit of measurement is the [db(C)]*dB(C). This frequency weighting network for the measurement of sound levels shall comply with standards established by the American National Standards Institute specifications for sound level meters S1.4-1971, as amended or S1.4-1983, as amended.*

[(o)] *(15)* Certificate means an operating or temporary operating certificate.

[(p)] *(16)* Charter means the New York city charter including all of its amendments.

[(q)] *(17)* Circulation device means any device which circulates a gas or fluid, including but not limited to any air conditioner, pump, cooling tower, fan or blower.

[(r)] *(18)* Claxon means any manually, mechanically, or electrically powered device, other than an emergency signal device, including but not limited to a motor vehicle horn, which is intended to, and when operated actually does, emit a sound signal.

[(s)] *(19)* This code means the New York city noise control code.

[(t)] *(20)* Commissioner means commissioner of environmental protection *or his or her authorized representative.*

[(u)] *(21)* Construction *or construction work* means any or all activity[, except tunneling,] necessary or incidental to the erection, demolition, assembling, altering, installing or equipping of buildings, public or private highways, roads, premises, parks, utility lines including such lines in already-constructed tunnels, or other property, including land clearing, grading, excavating and filling.

[(v)] *(22)* Construction device means any device designed and intended for use in construction including, but not limited to any air compressor, pile driver, [manual tool] *sledgehammer*, bulldozer, pneumatic hammer, steam shovel, derrick, crane, steam or electric hoist*, construction vehicle or pneumatic or electric tool.*

[(w)] *(23)* Construction material means any material, regardless of composition, designed and customarily used in construction including but not limited to any rails, pillars, columns, beams, bricks, flooring, wall, ceiling or roofing material, gravel, sand, cement or asphalt.

[(x)] *(24)* Container means any receptacle, regardless of contents, manufactured from wood, metal, plastic, paper or any other material including but not limited to any barrel, basket, box, crate, tub, bottle, can or refuse container.

4

[(y)] *(25)* Decibel[. The decibel is one-tenth of a bel. Thus, the decibel is a unit of level when the base of the logarithm is the tenth root of ten, and the quantities concerned are proportional to power.] *means the practical unit of measurement for sound pressure level; the number of decibels of a measured sound is equal to 20 times the logarithm to the base 10 of the ratio of the sound pressure to the pressure of a reference sound (20 micropascals); abbreviated "dB".*

[(z)] *(26)* Device means any mechanism which is intended to or which actually produces sound when operated or handled.

[(aa)] *(27)* Department means the department of environmental protection.

[(bb)] *(28)* Dwelling means any building *lawfully* occupied in whole or in part as the temporary or permanent residence of one or more natural persons.

[(cc)] *(29)* Dynamic insertion loss means the difference between two sound pressure levels which are measured at the same point in space before and after a muffler is inserted between the measurement point and the sound source under operating conditions.

[(dd)] *(30)* Emergency means a public calamity or an exposure of any person or property to imminent danger.

[(ee)] *(31)* Emergency signal device means any gong, siren whistle, or siren or any air horn or any similar device the use of which on authorized emergency vehicles is permitted by subdivision twenty-six of section three hundred seventy-five of the vehicle and traffic law.

[(ff)] *(32)* Exhaust source means a system which removes and transports air or gas from a device.

*(33) Extraneous sound is sound that is intense, intermittent, not representative of the relatively steady sound levels at a given location and not attributable to a source or sources under investigation for violation of this code. Such sound includes but is not limited to sirens of passing emergency vehicles, unusually loud motor vehicle braking (screeching) or exhaust noise, people shouting, animal vocalization, passing aircraft, horn honking, car door slamming and passing trains. Notwithstanding the foregoing provision, sounds that are individually persistent or controlling of the sound level at a given location shall not be considered to be extraneous sounds if they constitute more than 50 percent of the duration of an ambient or total sound level measurement such as for example the sound of a passing aircraft at a specific location if airplanes regularly pass over such location and the proximity of such passing aircraft to the location, its sound level, and the duration of such sound level, control the sound level at the given location at the time the sound source under investigation is being measured. For the purposes of the enforcement of this code, extraneous sounds are excluded when measuring the ambient sound level at a given location and when measuring the sound level of a source or sources under investigation for violation of this code except where such sounds are themselves under investigation for violation of this code.*

*(34) Impulsive sound is sound that is of short duration, where each peak of sound lasts 2 seconds or less. The sound is characterized by abrupt onset and rapid decay. As used in this code, the term impulsive sound shall not include music.*

[(gg)] *(35)* Internal combustion engine means a device for the production of energy by means of the combustion under pressure of fossil fuel.

[(hh)] *(36)* Lawn care device means any device powered mechanically, by electricity, by gasoline, by diesel fuel or by any other fuel, which is intended to be used or is actually used for the mowing of grass, the cutting or chipping of trees, tree roots or tree branches, or the clearing of leaves or other vegetation from lawns, sidewalks, public

5

streets or public highways and shall include, but not be limited to, such devices as lawn mowers and lawn mower attachments, lawn edgers, leaf blowers, leaf vacuums, mulchers and chippers.

*(37) Lmax means the maximum measured sound level at any instant in time.*

[(ii)] *(38)* Motor vehicle means any device which is propelled by an engine in or upon which a person or material may be transported on the ground and which is intended to be operated upon a public highway.

[(jj)] *(39)* Muffler means an apparatus generally consisting of but not limited to a series of chambers or baffles for the purpose of transmitting gases while reducing sound levels.

[(kk)  Noise means an erratic, intermittent, or statistically random oscillation.]

[(ll)] *(40)* Owner means and includes the owner of the freehold of the premises or lesser estate therein, or mortgagee thereof, a lessee or agent of any of the above persons, a lessee of a device or his or her agent, a tenant, operator, or any other person who has regular control of a device or an apparatus.

[(mm)] *(41)* Paving breaker means any powered construction device intended to cut or trench pavement, subbase macadam, gravel, concrete or hard ground.

[(nn)] *(42)* Person means any individual, partnership, company, corporation, association, firm, organization, governmental agency, administration or department, or any other group of individuals, or any officer or employee thereof.

*(43) Personal audio device means a portable sound reproduction device as normally and customarily used for personal purposes including but not limited to a personal radio, phonograph, television receiver, tape recorder or compact disc player.  For the purposes of this definition such term shall include a sound reproduction device installed in or operated from a motor vehicle whether or not portable.*

*(44) Plainly audible sound means any sound for which any of the content of that sound, such as, but not limited to comprehensible musical rhythms, is communicated to a person using his or her unaided hearing faculties.  For the purposes of the enforcement of this code, the detection of any component of music, including but not limited to the rhythmic bass by a person using his or her unaided hearing faculties is sufficient to verify plainly audible sound.  It is not necessary for such person to determine the title, specific words or artist of such music.  In the case of motor vehicles the detection of the sound of a muffler or of an exhaust by a person using his or her unaided hearing faculties is sufficient to verify plainly audible sound. Plainly audible sound does not require measurement with a sound level meter.*

[(oo)] *(45)* Power tool means any device powered mechanically, by electricity, by gasoline, by diesel fuel or by any other fuel, which is intended to be used or is actually used for, but shall not be limited to, the performance of such functions as cutting, nailing, stapling, sawing, vacuuming or drilling.

*(46) Public right-of-way means a public highway, road, street, avenue, alley, driveway, path, sidewalk, roadway or any other public place or public way.*

[(pp)] *(47)* Railroad means a railroad, other than a rapid transit railroad or street railroad, operated for public use in the conveyance of persons or property for compensation, with all bridges, ferries, tunnels, equipment, switches, spurs, tracks, stations and terminal facilities used, operated or owned by or in connection therewith.

[(qq)] *(48)* Rapid transit railroad means a rapid transit railroad used for local service in the transportation of passengers as a common carrier for hire together with the appurtenances, facilities and equipment thereof.

6

*(49)  Receiving property means real property, including but not limited to buildings, grounds, offices and dwelling units, from which sound levels from sound sources outside such property may be measured.  For the purposes of this definition, individual offices or dwelling units within a building may constitute a receiving property.*

[(rr)] *(50)* Refuse [compacting] *collection* vehicle means a motor vehicle designed *or used* to [compact and] remove, *collect, or transport* refuse, *solid waste or recyclables.*

[(ss)] *(51)* Sound means an oscillation in pressure, stress, particle displacement, particle velocity, etc., in a medium with internal forces (e.g., elastic, viscous), or the superposition of such propagated oscillation which evokes an auditory sensation.

[(tt)] *(52)* Sound level meter means any instrument including a microphone, an amplifier, an output meter, and frequency weighting networks for the measurement of noise and sound levels in a specified manner and which complies with standards established by the Amercian National Standards Institute specifications for sound level meters S1.4-1971, as amended *or S1.4-1983, as amended.*

[(uu)] *(53)*  Sound pressure level (decibels) means [a sound that is]*an expression of the acoustic pressure calculated as* twenty times the logarithm to the base ten of the ratio of the *root mean square of the* pressure of the sound to the reference pressure, [2 x 10-4 microbars] *20 micropascals.*

[(vv)] *(54)* Sound reproduction device means a device intended primarily for the production or reproduction of sound, including but not limited to any musical instrument, radio receiver, television receiver, tape recorder, phonograph or *electronic* sound amplifying system.

[(ww)] *(55)*  Sound signal means any sound produced by a sound signal device designed to transmit information.

[(xx)] *(56)* Sound signal device means a device designed to produce a sound signal when operated, including but not limited to any claxon, air horn, whistle, bell, gong, siren, but not an emergency signal device.

 [(yy)] *(57)* Sound source means any activity or device [as herein defined] *that emits sound.*

[(zz)] *(58)* This code means the *New York city* noise control code.

*(59)   Total sound level means that measured sound level that represents the combined sound level of the source or sources under investigation and the ambient sound level. Total sound level measurements shall exclude extraneous sound sources.*

[(aaa)] *(60)* Tunnel means an underground passage which is intended for use as a railway, aqueduct, road, sewer or major utility artery.

[(bbb)] *(61)* Tunneling means any activity necessary or incidental to the construction of any tunnel, including the sinking of shafts to tunnel or to an intermediate level and the surface activities required to sink the shafts and construct the tunnel.

[(ccc)]) *(62)* Unreasonable noise means any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities, injures or endangers the health or safety of a reasonable person of normal sensitivities or which causes injury to plant or animal life, or damage to property or business.

*(63) Refuse collection facility means any structure, building or other premises at which solid waste is received for the purpose of subsequent transfer to another location regardless of whether such solid waste is subject to any processing or reduction in volume at such structure, building or premises.*

 [(ddd) Zone means any zone as defined in the zoning resolution of the city of New York, except that zone shall not mean any ambient noise quality zone under subchapter

7

five or subchapter six of this chapter of this code or any noise sensitive zone under subchapter four of this chapter of this code

(ddd) Nursing home means a facility providing therein nursing care to sick, invalid, infirm, disabled, or convalescent persons in addition to lodging and board or health-related service, or any combination of the foregoing, and in addition thereto, providing nursing care and health-related service, or either of them, to persons who are not occupants of the facility.

(eee) Audible status indicator means any sound reproduction device on a motor vehicle that emits or causes to be emitted any continuous or near continuous sound for the purpose of warning that an audible burglar alarm has been installed on such motor vehicle and is operational or for creating the appearance that such an alarm has been installed on such motor vehicle and is operational.]

§3 Sections 24-204, 24-205, 24-206 and 24-207 of the administrative code of the city of New York, sections 24-204, 24-205 and 24-207 as amended by local law number 18 for the year 1993, are amended to read as follows:

§24-204 General powers of the commissioner. *(a)* Subject to the provisions of this code, the commissioner may take such action as may be necessary to abate a sound source which causes or may cause, by itself or in combination with any other sound source or sources, an unreasonable *or prohibited* noise. The commissioner may exercise or delegate any of the functions, powers and duties vested in him or her or in the department by this code.

*(b) The commissioner shall promulgate such rules as are necessary to effectuate the purposes of this code, including, without limitation, rules setting forth specifications for the operation, installation, best available technology, or manufacture of sound generating equipment or devices, or sound mitigation equipment or devices.*

*(c) The commissioner shall promulgate such rules as are necessary with regard to standards and procedures to be followed in the measurement of sound pressure levels governed by the provisions of this code, provided that such standards and procedures are substantially in compliance with any similar standards and procedures promulgated by the American National Standards Institute, International Standards Organization, Society of Automotive Engineers, Compressed Air and Gas Institute, American Society of Heating, Refrigeration, and Air Conditioning Engineers, American Refrigeration Institute or any generally recognized professional standard-setting organization.*

*(d) The police department, as well as other agencies of the city designated by the commissioner, shall have the authority to enforce the provisions of this code and police officers and designated employees of the department and of such other city agencies shall have the power to issue summonses, appearance tickets and notices of violation for violations of this code.*

§24-205 Investigations and studies by the commissioner. *(a)* The commissioner may make or cause to be made any investigation or study which in his or her opinion is desirable for the purpose of enforcing this code or controlling or abating an unreasonable *or prohibited* noise. For such purposes, the commissioner may make tests, conduct hearings, compel the attendance of witnesses, and take their testimony under oath and may compel the production of books, papers and other things reasonably necessary to the matter under consideration.

*(b) The commissioner shall study and propose strategies to control and/or reduce sound levels associated with airports, rapid transit and railroad operations and within twenty-four months of the effective date of this section shall report to the mayor his or*

8

*her findings and recommendations, specifically identifying those recommendations that may only be implemented through state or federal legislation or rules.*

*(c)  The commissioner, in conjunction with the police department, shall study noise abatement strategies for audible motor vehicle burglar alarms and within twenty-four months of the effective date of this section shall report to the mayor his or her findings and recommendations.*

*(d)  The commissioner, in conjunction with the police department, shall study on an ongoing basis emerging technology in acoustical measurement and shall periodically report to the mayor his or her findings and recommendations regarding the testing and potential use of equipment for enforcement of this code.  In conjunction with such study, the commissioner may issue a request for expressions of interest to determine new and emerging technological solutions for accurate and efficient measurement of sounds as enumerated in this code.*

*(e)  The commissioner shall study the impact of motor vehicle back-up warning devices installed on motor vehicles on ambient sound levels and within twenty-four months of the effective date of this section shall report to the mayor his or her findings and recommendations, specifically identifying those recommendations that may only be implemented through state or federal legislation.*

§24-206 Testing by order of the commissioner. (a) If the commissioner has reasonable cause to believe that any device is in violation of this code, the commissioner may order the owner of the device to conduct such tests as are necessary in the opinion of the commissioner to determine whether the device or its operation is in violation of this code and to submit the test results to the commissioner within ten days after the tests are completed.

(b) Such tests shall be conducted in a manner approved by the commissioner. If any part of the test is conducted at a place other than the site where the device is located, that part of the test shall be certified by a laboratory acceptable to the commissioner. The commissioner may require that the entire test results shall be reviewed and certified by *(i)* a professional engineer *with acoustical experience as specified in the rules of the department or (ii) a noise consultant with qualifications of education and/or acoustical experience as set forth in the rules of the department.*

(c) [The owner shall notify the commissioner of the time and place of a test at least seven days before the commencement of such test. Reasonable facilities shall be made available for the commissioner to witness the test.

(d)] If in the opinion of the commissioner, tests by the department are necessary, the commissioner may order the owner to provide such access to the device as the commissioner may reasonably request, to provide a power source suitable to the points of testing, and to provide allied facilities, exclusive of sound level meter. These provisions shall be made at the expense of the owner of the device. The owner shall be furnished with copies of the analytical results of the data collected.

*(d) If after the analysis of such testing, it is determined by the commissioner that such device or devices generate sound levels that exceed the limits of this code, the commissioner may make recommendations for modifications and/or mitigation measures to bring such device or devices into compliance.*

*(e) The commissioner may issue a separate notice of violation for every 24-hour period of noncompliance with the orders of the commissioner issued pursuant to this section.*

9

§24-207 Inspection. (a) The department may inspect at any reasonable time and in a reasonable manner any device which creates or may create unreasonable *or prohibited* noise including but not limited to the premises where the device is used.

(b) The department may inspect at any reasonable time and in a reasonable manner any record relating to a use of a device which creates or may create unreasonable *or prohibited* noise.

(c) No person shall refuse entry or access into the public areas of a multiple dwelling or a place  of business to an authorized employee of the department *or other authorized city employee* who presents appropriate credentials, nor shall any person refuse entry or access into any other portion of a [premise]*premises* to an authorized employee of the department *or other authorized city employee* who presents appropriate credentials and a [search] warrant *for such inspection.*

*(d)  No person shall refuse to allow an authorized employee of the department or other authorized city employee who presents appropriate credentials to perform reasonable sound testing on any device or devices, including but not limited to requiring the temporary shutting down of said device or devices for the purposes of such testing except that upon a showing that the inspection would produce a noticeable interruption of services that would cause discomfort to employees or customers or require a building engineer or other professional to work with the equipment, such authorized employee shall reschedule the inspection for a more convenient time.*

§4.  Subdivision (a) of section 24-208 of such code is amended to read as follows:

(a)  The commissioner may require the written registration of air compressors, paving breakers, refuse compacting vehicles and rapid transit railroads, including but not limited to its rolling stock, track and trackbeds, passenger stations*, circulation devices rated 300,000 BTUs or higher,* tunnels, elevated structures, yards, depots and garages. A period of sixty days shall be allowed for the filing of such registration *measured from the date such registration is required by the commissioner or with respect to devices installed after such requirement is instituted measured from the date of installation.* However, in cases of emergency, the commissioner may designate a shorter period of time.

§5.  Section 24-211 of such code is amended to read as follows:

§24-211 Display of permits[.] *and* certificates [and other notices; removal or mutilation prohibited]. Any tunneling permit or certificate required by this code shall be displayed in the vicinity of the device on the premises designated on the tunneling permit or certificate or in the vicinity of the place where the device will be operated or supervised.

§6.  Paragraph (1) of subdivision (b) of section 24-213 of such code is amended to read as follows:

(1) Either by mailing the notice, order or decision directed to the person at his or her principal place of business *or home address*; or

§7.  Section 24-217 of such code is amended to read as follows:

§24-217 Exemptions.  The provisions of this code shall not apply to the operation or use of any organ, bell, chimes or other similar instrument [by] *from on or within* any church, synagogue, mosque or [school] *other house of worship.*

§8.  Such code is amended by adding a new section 24-217.1 to read as follows:

*§24-217.1  Measurements.  Unless otherwise specifically provided, all sound level measurements under this code shall be taken in Lmax with the sound level meter set to slow response.*

10

§9.  Section 24-218 of such code, as amended by local law number 18 for the year 1993, is amended to read as follows:

§24-218 General prohibitions. *(a)* No person shall make, continue or cause or permit to be made or continued any unreasonable noise[, except that this section shall not apply to any sound from any source where the decibel level of such sound is within the limits prescribed by another section of this title and where there is compliance with all other applicable requirements of law with respect to such sound].

*(b) Unreasonable noise shall include but shall not be limited to sound, attributable to any device, that exceeds the following prohibited noise levels:*

*(1) Sound, other than impulsive sound, attributable to the source, measured at a level of 7 dB(A) or more above the ambient sound level at or after 10:00 p.m. and before 7:00 a.m., as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way.*

*(2) Sound, other than impulsive sound, attributable to the source, measured at a level of 10 dB(A) or more above the ambient sound level at or after 7:00 a.m. and before 10:00 p.m., as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way.*

*(3) Impulsive sound, attributable to the source, measured at a level of 15 dB(A) or more above the ambient sound level, as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way. Impulsive sound levels shall be measured in the A-weighting network with the sound level meter set to fast response. The ambient sound level shall be taken in the A-weighting network with the sound level meter set to slow response.*

*(c) Notwithstanding the provisions of subdivision b of this section, where a particular sound source or device is subject to decibel level limits and requirements specifically prescribed for such source or device elsewhere in this code, the decibel level limits set forth in this section shall not apply to such sound source or device.*

*(d) The decibel level limits set forth in this section shall not apply to sound attributable to construction devices and activities.*

*(e) Where the commissioner finds that sound from any refuse collection facility regulated by the department of sanitation exceeds the decibel level limits set forth in this section, the commissioner shall order the operator of such facility to submit a certification by a professional engineer as to whether or not the facility is in compliance with the noise standards required by the department of sanitation rules (16 RCNY Ch. 4) and if not in compliance, the mitigation measures that will be undertaken to bring such facility into compliance. The testing and certification must be submitted to the department and to the department of sanitation within forty-five days after the issuance of such order. A facility that complies with an order issued pursuant to this section and with any required mitigation measures shall be deemed to be in compliance with the decibel limits of this section. With respect to any refuse collection facility owned or operated by the department of sanitation such facility shall be deemed to be in compliance with the decibel level limits of this section if it is in compliance with a best management practices plan developed in conjunction with the department. A notice of violation may only be issued for a refuse collection facility pursuant to this section where the operator of such facility fails to comply with an order of the commissioner issued pursuant to this subdivision or the mitigation measures set forth in a certification.*

§10.  Subchapters 4, 5 and 6 of chapter 2 of title 24 of such code are REPEALED and new subchapters 4, 5 and 6 are added to read as follows:

**SUBCHAPTER 4**

11

***Construction Noise Management***

§24-219  *Noise mitigation rules.  (a) The commissioner shall adopt rules prescribing noise mitigation strategies, methods, procedures and technology that shall be used at construction sites whenever any one or more of the construction devices or activities listed below are employed or performed:*

*(1) air compressors.*
*(2) pile drivers.*
*(3) sledgehammers.*
*(4) bulldozers.*
*(5) pneumatic hammers.*
*(6) steam shovels.*
*(7) derricks.*
*(8) cranes.*
*(9) steam or electric hoists.*
*(10) off-road construction vehicles other than trucks.*
*(11) pumps.*
*(12) pneumatic tools.*
*(13) blasting.*
*(14) power tools.*
*(15) tunneling machines.*
*(16) construction devices with internal combustion engines.*
*(17) construction devices that emit impulsive sound.*
*(18) construction devices that create vibration.*
*(19) metal plates used in street construction to temporarily cover excavations.*
*(20) any other construction devices or activities specified in such rules.*

*(b)  Such rules shall include but shall not be limited to:*
*(1) The use of perimeter fences with acoustical insulation, where appropriate.*
*(2) The use of portable barriers with acoustical insulation, where appropriate.*
*(3) The use of acoustical blanket insulation, where appropriate.*
*(4) Testing of exhaust mufflers and certification, in a form and manner to be specified in the rules, that mufflers meet factory specifications for noise emissions at maximum loading at the commencement of construction at the site.*
*(5) The development of generic noise mitigation plans, where appropriate.*
*(6) Additional mitigation measures for sensitive receptors such as hospitals and schools, where appropriate.*

*(c) The commissioner shall appoint an advisory committee, which shall include, but shall not be limited to, representatives of utility companies and the construction industry, including those industries related to heavy construction, persons with acoustical expertise and/or expertise regarding the health effects of noise, a representative of the city council and employees of the department and of other relevant city agencies. The committee shall provide advice and recommendations to the department relating to construction noise mitigation and shall assist the department in the  development of the noise mitigation rules required by this section.  The commissioner shall consult with the committee regarding any proposed amendments of such rules.  In the development of such rules the commissioner shall consider factors such as the availability, cost and safety of proposed noise mitigation measures.*

§24-220  *Noise mitigation plan.  (a)  Each person, corporation or other business entity performing construction work in the city shall adopt and implement a noise mitigation plan for each construction site in accordance with the provisions of this*

12

*subchapter and such rules whenever any one or more of the construction devices or activities listed above or in the department's rules are employed or performed at the site.*

*(b)  Such plan shall be adopted prior to the commencement of construction at the site or, with respect to emergency work, as defined in the department's rules, within three days thereafter, and shall apply to all work at the site throughout the construction process. The plan shall provide in detail the noise mitigation strategies, methods, procedures and technology, as prescribed in the rules of the department or specifically approved by the commissioner in accordance with section 24-221 of this code, for each device or activity employed or performed at the site.  Each permit holder or other person in charge of such construction site will be accountable for compliance with such rules and shall ensure that each person performing construction work at the site shall be aware of the plan and shall be responsible for complying with those provisions that affect his or her work.*

*(c) A copy of the plan shall be kept at the construction site and shall be made available for inspection upon the request of persons authorized to enforce the provisions of this code.*

*(d)  The plan shall be amended whenever additional devices or activities unforeseen at the commencement of construction are employed at the site or at the direction of the commissioner in accordance with section 24-223 of this subchapter.*

*(e)  A plan need not be filed with or approved by the department prior to the commencement of construction if it conforms in all respects to the rules of the department with respect to construction devices and activities employed or performed at the construction site.  A plan that deviates in any respect from such rules or an alternative noise mitigation plan required to be certified in conjunction with a undue hardship application pursuant to paragraph (5) of subdivision (e) of section 24-223 shall be subject to the prior approval of the commissioner in accordance with section 24-221 of this code.*

*(f)  This section shall not apply to construction work in connection with the alteration or repair of an existing one or two family owner-occupied dwelling classified in occupancy group J-3 or a convent or rectory.*

*§24-221  Alternative noise mitigation plan.  (a) Upon application, the commissioner may approve an alternative noise mitigation plan for a particular construction site that deviates from strict compliance with the noise mitigation rules.  Application for approval of such plan shall be submitted to the department at least ten business days prior to the commencement of construction or as soon as practicable but no later than 24 hours prior to the commencement of construction in a form and manner and accompanied by such information and documentation as shall be set forth in the rules of the department. The commissioner may approve such alternative noise mitigation plan if he or she finds that:*

*(1) strict compliance with the noise mitigation rules would not be possible or would create an undue hardship because of the location or unique characteristics of the site or of the construction devices or activities to be employed or performed at the site; and*

*(2) the alternative noise mitigation strategies, methods, procedures or equipment proposed are consistent with the purposes and policies of this code.*

*(b)  Notwithstanding the foregoing provisions, with respect to construction sites where construction is performed pursuant to a permit issued prior to the effective date of this section or in the case of construction by or on behalf of a city agency where construction is performed under a contract bid out prior to the effective date of this section, application for approval of an alternative noise mitigation plan may be*

13

*submitted within 60 days after the effective date of this section.  The commissioner may approve such plan if he or she finds that:*

*(1) strict compliance with the noise mitigation rules would not be possible or would create an undue hardship because of the location or unique characteristics of the site or of the construction devices or activities employed or performed at the site, or*

*(2) strict compliance with such rules would be unreasonable or unduly burdensome with respect to construction work that is imminent or ongoing on the effective date of this section, or*

*(3) with respect to city construction projects, the implementation of contract modifications to achieve strict compliance with such rules would result in unreasonable delay and/or increased expenditure for a necessary public improvement, and*

*(4) the alternative noise mitigation strategies, methods, procedures or equipment proposed are consistent with the purposes and policies of this code.*

*(c)   Where the commissioner rejects an alternative noise mitigation plan, an applicant may appeal such rejection in accordance with the rules of the department.  An alternative plan shall not be in effect unless and until it has been approved by the commissioner   except that where a timely alternative plan has been filed with the commissioner for approval, a construction site in compliance with such alternative plan shall be deemed to be in compliance with this section unless and until such plan is rejected by the commissioner and for a reasonable time thereafter as determined by the commissioner.*

*§24-222  After hours and weekend limits on construction work.  Except as otherwise provided in this subchapter, it shall be unlawful to engage in or to cause or permit any person to engage in construction work other than on weekdays between the hours of 7 a.m. and 6 p.m.  A person may however perform construction work in connection with the alteration or repair of an existing one or two family owner-occupied dwelling classified in occupancy group J-3 or a convent or rectory on Saturdays and Sundays between the hours of 10 a.m. and 4 p.m. provided that such dwelling is located more than 300 feet from a house of worship.*

*§24-223  After hours work authorization.  (a) Notwithstanding section 24-222 of this subchapter, an agency authorized to issue permits for construction work may, along with such permit, issue an after hours work authorization for the work site.  Such after hours authorization may permit construction work to be performed at the site before 7 a.m. or after 6 p.m. on weekdays and/or on Saturdays and/or Sundays subject to the conditions and restrictions set forth in this section.*

*(b)   The agency issuing such authorization must obtain a certification from its permittee that the permittee has developed a noise mitigation plan for the site in accordance with this subchapter and that such plan is in compliance with the noise mitigation rules.  In the case of emergency work such certification shall be submitted within 3 days after the commencement of the work.*

*(c)  If after hours work at the site is not being performed in compliance with such plan or where no plan is in effect, the department or the agency issuing such authorization, at the request of the commissioner or on its own account, may take appropriate action, including but not limited to the refusal to renew such after hours authorization.*

*(d)  Where there is full compliance with the noise mitigation plan yet nevertheless aggregate sound levels from the site where an after hours authorization is in effect exceed 8dB(A) above the ambient sound level as measured in any residential receiving property dwelling unit (with windows and doors that may affect the measurement*

14

*closed), the commissioner may request the person performing the work to confer with representatives of the department regarding additional noise mitigation measures that may be employed at the site to reduce aggregate sound levels. After such conference the commissioner may direct amendment of the noise mitigation plan for the site. Failure to respond to a request for a conference or to amend the noise mitigation plan within the time prescribed in a notice issued by the department shall be a violation of this code.*

*(e) Authorization for after hours construction work may only be issued in the following circumstances:*

*(1) Emergency work. Agencies shall authorize such after hours construction work for emergency conditions, inside or outside the property line, involving a threat to public safety or causing or likely to cause the imminent interruption of service required by law, contract or franchise. An emergency authorization issued pursuant to this paragraph shall expire as determined by the agency but no later than the ninetieth day after its issuance and shall be renewable in accordance with agency procedures while the emergency continues.*

*(2) Public safety. Agencies may authorize such after hours work, inside or outside of the property line, where the agency determines that the work cannot reasonably or practicably be performed on weekdays between the hours of 7 a.m. and 6 p.m. because of traffic congestion and/or concern for worker and/or public safety. An authorization issued pursuant to this paragraph shall expire as determined by the agency but no later than the ninetieth day after its issuance and shall be renewable in accordance with agency procedures.*

*(3) City construction projects. Agencies may authorize after hours work by or on behalf of city agencies for projects that are judicially mandated or the subject of consent orders and/or where a project is necessary in the public interest including but not limited to facilities, equipment, and infrastructure for the provision of water, sewerage, sanitation, transportation and other services necessary for the health or safety of the public. An authorization issued pursuant to this paragraph for a city construction project shall remain in effect for the duration of the project.*

*(4) Construction activities with minimal noise impact. The commissioner shall promulgate rules setting forth a list of construction activities with minimal noise impact and specific noise mitigation measures applicable to such activities. Agencies may authorize the performance of such construction activities after hours in accordance with such rules.*

*(5) Undue hardship. Agencies may authorize after hours work if the commissioner certifies that the permit holder has substantiated a claim of undue hardship resulting from unique site characteristics, unforeseen conditions, scheduling commitments and/or financial considerations outside the control of the permit holder and that the applicant has received approval from the department of an alternative noise mitigation plan pursuant to section 24-221 of this subchapter, specifying the activities and devices that will be used for such after hours construction and setting forth the additional mitigation measures, above and beyond those measures otherwise required for such devices and activities pursuant to the department's rules, that the applicant will use to significantly limit noise emissions from the site of such after hours work. Applications for such certification shall be submitted to the department in a form and manner to be set forth in the rules of the department. The applicant for an after hours authorization under this paragraph shall submit such certification to the issuing agency.*

*§24-224 Construction work without noise mitigation plan unlawful. It shall be unlawful to perform work at any construction site in the city that is not in compliance*

15

*with a noise mitigation plan where such plan is required pursuant to this subchapter and with the noise mitigation rules adopted pursuant to this subchapter. Notwithstanding any other provision of this code, construction work performed in accordance with a noise mitigation plan that is in full compliance with this subchapter and such rules shall be deemed to be in compliance with all decibel level limits set forth in other subchapters of this code. The provisions of this subchapter shall supercede all other provisions of this code relating to construction activities or devices that are inconsistent with or in conflict therewith.*

### SUBCHAPTER 5
### PROHIBITED NOISE
### SPECIFIC NOISE SOURCES – SOUND LEVEL STANDARD

*§24-225 Refuse collection vehicles. (a) No person shall sell, offer for sale, operate or permit to be operated a refuse collection vehicle, equipped with a compacter, that produces a maximum sound level when the compacting mechanism is in the compacting cycle but not engaged in compacting a load that exceeds 80 dB(A), when measured by a sound level meter set for slow response at a distance of 35 feet or more from the compacting unit.*

*(b) It shall be unlawful to operate or cause to be operated a refuse collection vehicle, including such a vehicle equipped with a compacter, within 50 feet of any residential receiving property at or after 11:00 p.m. and before 7:00 a.m. if the aggregate sound, not including impulsive sound, generated by the collection and compacting activities exceeds 85 dB(A) when measured by a sound level meter set to slow response at a distance of 35 feet or more from the vehicle. On and after July 1, 2012 such aggregate sound shall not exceed 80 dB(A). The provisions of this subdivision shall not apply to the operation of refuse collection vehicles during an emergency such as a storm or other event that causes delays in refuse collection.*

*§24-226 Air compressors. (a) No person shall operate or cause to be operated an air compressor unless it is equipped with an appropriate muffler with no exhaust leaks.*

*(b) No person shall sell, offer for sale for use within the city of New York, or operate or permit to be operated an air compressor that, when operated, produces a maximum sound level, when measured at a distance of one meter or more from the nearest major surface of such air compressor, exceeding 80 dB(A) for sizes greater than 350 cfm or exceeding 75 dB(A) for sizes 350 cfm or less.*

*(c) Except for construction work outside the property line on a public right-of-way, no person shall operate or permit to be operated an air compressor so as to generate sound levels in excess of 75 dB(A) as measured at any receiving property.*

*§24-227 Circulation devices. (a) No person shall operate or permit to be operated a circulation device in such a manner as to create a sound level in excess of 42 dB(A) when measured inside a receiving property dwelling unit. The measurement shall be taken with the window or terrace door open at a point three feet from the open portion of the window or terrace door.*

*(b) On and after the effective date of this section, when a new circulation device is installed on any building lot or an existing device on any building lot is replaced, the cumulative sound from all circulation devices on such building lot owned or controlled by the owner or person in control of the new device being installed or the existing device being replaced shall not exceed 45 dB(A), when measured as specified in subdivision a of this section. For a period of two years after the effective date of this section, this subdivision shall not apply to the replacement of a circulation device that was installed*

16

on any building lot prior to the effective date of this section by a device of comparable capacity.

(c) Except as otherwise provided in subdivision b of this section, with respect to circulation devices installed on any building lot prior to the effective date of this section, the sound level limit of 42 dB(A) referred to in subdivision a of this section shall apply to each individual device except that if the cumulative sound from all devices owned or controlled by the same person on a  building lot exceeds 50 dB(A), when measured as specified in subdivision a of this section, the commissioner may order the owner or person in control of such devices  to achieve a 5 dB(A) reduction in such cumulative sound level within not more than 12 months after the  issuance of such order.

§24-228  Construction, exhausts and other devices.  (a) No person shall operate or use or cause to be operated or used a construction device or combination of devices in such a way as to create an unreasonable noise. For the purposes of this section unreasonable noise shall include but shall not be limited to sound that exceeds the following prohibited noise levels:

(1) Sound, other than impulsive sound, attributable to the source or sources, that exceeds 85 dB(A) as measured 50 or more feet from the source or sources at a point outside the property line where the source or sources are located or as measured 50 or more feet from the source or sources on a public right-of-way.

(2) Impulsive sound, attributable to the source, that is 15 dB(A) or more above the ambient sound level as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way. Impulsive sound levels shall be measured in the A-weighting network with the sound level meter set to fast response. The ambient sound level shall be taken in the A-weighting network with the sound level meter set to slow response.

(b) Where a particular sound source or device is subject to decibel level limits and requirements specifically prescribed for such source or device elsewhere in this code, such specific decibel limits shall apply to such device or source.  However, if aggregate sound levels from a construction  site exceed the  limits set forth in this section, compliance with such specific decibel limits shall not be a defense in any proceeding relating to a violation of this section.

§24-228.1 Exhausts.  No person shall cause or permit discharge into the open air of the exhaust of any device, including but not limited to any steam engine, diesel engine, internal combustion engine, power tools, compressors or turbine engine, so as to create an unreasonable noise.   For the purposes of this section unreasonable noise shall include but shall not be limited to sound that exceeds the prohibited noise levels set forth in section 24-228.

§24-229  Containers and construction material. (a) No person shall handle or transport or cause to be handled or transported on any public right-of-way any container or any construction material in such a way as to create an unreasonable noise. For the purposes of this section unreasonable noise shall include but shall not be limited to the following prohibited noise levels:

(1) Sound, other than impulsive sound, attributable to the source measured at a level of 10 dB(A) or more above the ambient sound level, as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a  public right-of-way.

(2) Impulsive sound, attributable to the source, measured at a level of 15 dB(A) or more above the ambient sound level, as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public

17

*right-of-way.  Impulsive sound levels shall be measured in the A-weighting network with the sound level meter set to fast response. The ambient sound level shall be taken in the A-weighting network with the sound level meter set to slow response.*

*(b)   This section shall not apply to the operation of refuse collection vehicles regulated pursuant to section 24-225.*

*§24-230  Paving breakers. (a)  No person shall operate or cause to be operated a paving breaker, other than one operated electrically or hydraulically, unless a pneumatic discharge muffler certified by the manufacturer of such muffler to provide a dynamic insertion loss of 5 dB(A) of the sound released from the air discharge of such paving breaker is installed on such air discharge.*

*(b) No person shall sell, offer for sale for use within the city of New York, operate or permit to be operated a paving breaker that when operated produces a maximum sound level that exceeds 95 dB(A), when measured at a distance of one meter or more from a face of such paving breaker.*

*§24-231   Commercial music.  (a) No person shall make or cause or permit to be made or caused any music originating from or in connection with the operation of any commercial establishment or enterprise when the level of sound attributable to such music, as measured inside any receiving property dwelling unit:*

*(1) is in excess of 42 dB(A)  as measured with a sound level meter; or*

*(2)  is in excess of 45 dB in any one-third octave band having a center frequency between 63 hertz and 500 hertz (ANSI bands numbers 18 through 27, Inclusive), in accordance with American National Standards Institute standard S1.6-1984; or*

*(3)  causes a 6 dB(C) or more increase in the total sound level above the ambient sound level as measured in decibels in the "C" weighting network provided that the ambient sound level is in excess of 62 dB(C).*

*(b) (1) The commissioner may recommend to the board that there shall be no civil penalty imposed for a first violation of this section if, within 30 days after the issuance of such violation or, if applicable, within the time granted by the commissioner pursuant to paragraph two of this subdivision, the respondent admits liability for the violation and files a certification with the department in a form and manner and containing such information and documentation as shall be prescribed in the department's rules that (i) permanent improvements or modifications have been made to the establishment, including but not limited to the installation of appropriate sound insulation, isolators, suspension mounting and/or sound mitigation devices or materials and (ii) appropriate sound measurements taken in accordance with the department's rules substantiate that the establishment is in full compliance with the sound levels set forth in this section.  If the commissioner accepts such certification of compliance, he or she shall recommend to the board that no civil penalty shall be imposed for the violation.  Such violation may nevertheless serve as a predicate for purposes of imposing penalties for subsequent violations of this section.*

*(2) Where the completion of appropriate permanent improvements or modifications and testing within 30 days after the issuance of the violation would cause the respondent undue hardship, the respondent may apply to the commissioner for additional time to submit an appropriate certification of compliance, but not more than 30 days. Application for such additional time must be submitted to the commissioner within 30 days after the issuance of the violation along with an admission of liability and appropriate documents in support of the claim of undue hardship.*

*(3) Nothing in this subdivision shall be construed to prohibit enforcement personnel from issuing additional notices of violation, summonses or appearance tickets where*

18

*sound levels exceed the limits set forth in subdivision a of this section during the periods of time set forth in paragraphs one and two of this subdivision for submission of a certification of compliance for a first violation.*

*(c)  In any proceeding under this section it shall be an affirmative defense that the receiving property dwelling unit was not lawfully occupied at the time of the violation.*

*(d) The commissioner may grant a variance from strict application of the limits set forth in subdivision (a) of this section for a commercial establishment or enterprise that was in operation at the same site prior to the date of enactment of the local law that added this section if he or she finds that there are practical difficulties or unnecessary hardship in the application of such provisions in the specific case, provided that as a condition to the grant of any such variance, sufficient evidence or data is submitted by an applicant that there are physical conditions or zoning district conditions, including irregularity in lot size characteristics and zoning changes, and that as a result of such physical or zoning district conditions, practical difficulties or unnecessary hardship arise in complying with such provisions.  In granting a variance the commissioner may impose such terms and conditions as he or she deems necessary to carry out the intent of this section to minimize noise emissions from the site.  Application for a waiver shall be submitted in such form and manner as shall be provided by rules of the department and shall include in detail proposed measures which the applicant proposes will minimize sound from the site.  A variance granted pursuant to this subdivision shall not be transferable but shall expire upon a change in ownership, size or location of the commercial establishment or enterprise in accordance with the rules of the department. Violation of the conditions of any variance shall be deemed to be a violation of this section.*

*§24-232 Allowable decibel levels-octave band measurement.  (a) No person shall cause or permit a sound source operating in connection with any commercial or business enterprise to exceed the decibel levels in the designated octave bands shown below as measured within a receiving property as specified therein.*

| Octave Band | Maximum Sound Pressure  Levels (dB)  as measured within a receiving property as specified below | |
| --- | --- | --- |
| Frequency (Hz) | Residential receiving property  for mixed use buildings and residential buildings (as measured within any room of the residential portion of the building with windows open, if possible). | Commercial receiving property (as measured within any room containing offices within the building with windows open, if possible). |
| 31.5 | 70 | 74 |
| 63 | 61 | 64 |
| 125 | 53 | 56 |
| 250 | 46 | 50 |
| 500 | 40 | 45 |
| 1000 | 36 | 41 |
| 2000 | 34 | 39 |
| 4000 | 33 | 38 |
| 8000 | 32 | 37 |

*(b) All sources that are within the A-scale limits prescribed by any other section of this code must also comply with the octave band decibel levels as specified herein. Compliance with this section does not constitute a defense to violation of decibel limits set by any other section of this code.*

*(c) Measurements performed on residential property shall not be taken in non-living areas such as closets and crawlspaces.*

*(d) This section shall not apply to impulsive sound, music or construction devices or activities.*

*(e) This section shall not apply to any utility structure in existence prior to January 1, 2004.  For the purposes of this subdivision the term "utility structure" means any electric substation owned or operated by an electric, gas, or steam utility subject to the jurisdiction of the New York state public service commission.*

*(f)  This section shall not apply to any refuse collection facility owned, operated or regulated by  the department of sanitation.*

*SUBCHAPTER 6*

*SPECIFIC NOISE SOURCES*

*PLAINLY AUDIBLE AND OTHER STANDARDS*

*§24-233 Personal audio devices. (a)  No person shall operate or use or cause to be operated or used any personal audio device in such a manner as to create an unreasonable noise.*

*(b)  For the purposes of this section unreasonable noise shall include but shall not be limited to:*

*(1) the operation or use of a personal audio device on or in any public right-of-way so that sound emanating from such device is plainly audible to another individual at a distance of 25 feet or more from the source.*

*(2) the operation or use of a personal audio device from on or inside a motor vehicle, whether moving, parked, stopped or standing, on or in any public right-of-way so that sound emanating from such device is plainly audible to another individual outside of such motor vehicle at a distance of 25 feet or more from the source.*

*(c)  Nothing in this section shall be construed to permit the operation or use of a personal audio device where such operation or use would otherwise be prohibited pursuant to section 10-108 or 24-244 of the administrative code.*

*§24-234  Operation or use of sound reproduction device in or on rapid transit railroad, omnibus or ferry.  It shall be unlawful to operate or use a sound reproduction device in or on any rapid transit railroad, omnibus or ferry, other than a personal audio device with personal earphones such that sound from such earphones is not plainly audible to another individual at a distance of 5 feet or more from the source.*

*§24-235 Animals. No person having charge, care, custody, or control of any animal shall cause or permit such animal to cause unreasonable noise including, but not limited to, any sound that is plainly audible at any location within any residential receiving property as set forth below:*

*(a) At or after 7 a.m. and before 10 p.m., continuously for a period of 10 minutes or more.*

*(b) At or after 10 p.m. and before 7 a.m., continuously for a period of 5 minutes or more.*

*§24-236   Motor vehicles.  (a) Motor vehicles, other than motorcycles, with a maximum gross weight of 10,000 lbs. or less.  No person shall cause or permit any motor vehicle, other than a motorcycle, with a maximum gross weight of 10,000 lbs. or less to*

20

operate on a public right-of-way where the muffler or exhaust generates a sound that is plainly audible to another individual at a distance of 150 feet or more from the motor vehicle.

(b) Motorcycles.  No person shall cause or permit any motorcycle to operate on a public right-of-way where the muffler or exhaust generates a sound that is plainly audible to another individual at a distance of 200 feet or more from the motorcycle.

(c)  Motor vehicles with a maximum gross weight greater than 10,000 lbs.  No person shall cause or permit any motor vehicle with a maximum gross weight greater than 10,000 lbs. to operate on a public right-of-way where the muffler or exhaust generates a sound that is plainly audible to another individual at a distance of 200 feet or more from the motor vehicle, except when compression brake systems are used in an emergency to stop the vehicle.

(d) (1) No person operating a motor vehicle containing a compression brake system or systems shall apply such compression brake system or systems except when such system or systems are used in an emergency to stop the vehicle.

(2)  The department is authorized to post signs at every entry point of the city containing the following information: THE USE OF COMPRESSION BRAKE SYSTEMS IS PROHIBITED ON STREETS WITHIN NEW YORK CITY WHERE THE SPEED LIMIT IS 35 MILES PER HOUR OR LESS EXCEPT IN CASE OF AN EMERGENCY.

(e)  No person shall cause or permit the total sound from a motor vehicle operating on any public right-of-way to exceed the sound level set forth in section 386 of the vehicle and traffic law and the rules adopted pursuant to such section.

(f) Subdivisions a, b, c and paragraph one of subdivision d of this section may only be enforced on streets where the speed limit is 35 miles per hour or less.

§24-237  Sound signal devices.  (a) No person shall operate or use or cause to be operated or used any claxon installed on a motor vehicle, except as a sound signal of imminent danger or in connection with use as an audible motor vehicle burglar alarm as provided in section 24-238 of this code.

(b) No person shall operate or use or cause to be operated or used an air horn or gong installed on any motor vehicle other than as provided in section 24-241 of this code.

(c) No person shall operate or use or cause to be operated or used any steam whistle attached to any stationary boiler, except to give notice of the time to start and stop work or as a sound signal of imminent danger.

(d)  No person shall operate or use or cause to be operated or used on any public right-of-way any electrically operated or electronic sound signal device (other than a safety device, such as but not limited to a car horn or back up signal, that is actually used for its intended purpose) attached to, on or in a motor vehicle, wagon or manually propelled cart from which food or any other items are sold or offered for sale when the vehicle is stopped, standing or parked.  For the purposes of this subdivision the term "stopped" means the halting of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with a police officer or other authorized enforcement officer or a traffic control sign or signal.  The terms "standing" and "parked" shall be as defined in the vehicle and traffic law.

§24-238 Audible burglar alarm and audible status indicator.  (a) No owner of a building or of a motor vehicle shall have in operation an audible burglar alarm thereon unless such burglar alarm shall be capable of and shall automatically terminate its operation within fifteen minutes of its being activated in the case of a building, and three

21

*minutes of its being activated in the case of a motor vehicle. No audible burglar alarm on a motor vehicle shall be capable of being activated except by:*

*(i) direct physical contact with that motor vehicle; or*

*(ii) through the use of an individual remote activation device, that is activated from no further than 15 feet away from such vehicle and, that is designed to be used with the audible burglar alarm system of a particular vehicle which alarm shall be capable of and shall terminate its audible response within three minutes of its being activated.*

*(b) No owner of a motor vehicle shall have in operation an audible status indicator on such motor vehicle.*

*§24-239 Audible burglar alarm or audible status indicator may be disconnected. (a) Notwithstanding the provisions of section 24-238, any member of the police department shall have the right to take such steps as may be reasonable and necessary to disconnect any audible burglar alarm or audible status indicator that is installed on a motor vehicle at any time during the period of its activation.*

*(b)   The operator of any motor vehicle on which an audible burglar alarm or audible status indicator has been installed shall when parked on a public highway or parking lot open to the public, prominently display the number and telephone number of the owner's local police precinct where information shall be on file to permit communication with the owner of such vehicle.*

*§24-240  Removal of vehicle with audible burglar alarm or audible status indicator. (a) Notwithstanding the provisions of section 24-239, any member of the police department may arrange for the removal of a motor vehicle from a public highway or parking lot open to the public, when:*

*(i) an audible burglar alarm installed on such vehicle is operated in violation of this code or an audible status indicator is operated on such vehicle; and*

*(ii) all reasonable and necessary steps to disconnect such alarm or audible status indicator have been taken without success. Authorized personnel of the department or the department of transportation may request a member of the police department to arrange for removal of such vehicle. When such removal is requested, the notice of violation for operation of an audible burglar alarm in violation of this section or for operation of an audible status indicator shall state that a member of the police department took all reasonable and necessary steps to disconnect such alarm or such audible status indicator without success. Such removal may be accomplished by utilizing any existing city-operated tow-program, rotation tow program established pursuant to section 20-519 of the code or such other procedures as may be established. The cost of towing and storage of such motor vehicle shall be the responsibility of the owner or other person who claims such vehicle.*

*(b) An opportunity for a hearing before the board shall be provided to the owner of a motor vehicle removed pursuant to this section within five business days after a request for a hearing is made to determine whether there was a basis for such removal. The board shall render a decision within two business days following the conclusion of the hearing.  If it is determined that there was no basis for removal of a vehicle pursuant to this section, the owner of such vehicle may recover from the city any amounts paid by such owner for towing and storage.*

*§24-241  Emergency signal devices. (a) No person shall operate or use or cause to be operated or used any emergency signal device, except on an authorized emergency vehicle when such vehicle is in the act of responding to an emergency; provided that such device shall not be operated for a period of time longer than is necessary to respond to such emergency. Notwithstanding the foregoing, such a device on a motor*

22

*vehicle shall be lawful if designed and used solely as an audible motor vehicle burglar alarm in accordance with section 24-238 and a device attached to a vehicle for the purpose of providing an audible warning when the vehicle is backing up shall be permitted even though the audible warning may consist of a gong or bell sound.*

*(b) No person shall operate or permit to be operated an emergency signal device installed on an authorized emergency vehicle that when operated at the maximum level creates a sound level in excess of 90 dB(A) when measured at a distance of fifty feet from the center of the forward face of such vehicle. Within one year after the effective date of this subdivision and every two years thereafter, emergency signal devices installed on authorized emergency vehicles shall be tested and certification shall be submitted, in a form approved by the department, that such devices meet the standard set forth in this subdivision for operation at maximum level. Notwithstanding the foregoing provisions, where compliance with the provisions of this subdivision would create an undue hardship, the owner or operator of an authorized emergency vehicle may submit a plan to the commissioner for emergency signal devices to meet the standard set forth in this subdivision within two years after the effective date of this subdivision. Such plan shall be submitted within one year after the effective date of this subdivision in lieu of the required certification. This subdivision shall not apply to authorized emergency vehicles of the police department, fire department or authorized emergency vehicles responding to medical emergencies.*

*§24-242 Lawn care devices. (a) No person shall operate or use or cause to be operated or used any lawn care device:*

*(1) On weekdays before eight a.m. and after seven p.m. or sunset, whichever occurs later; or*

*(2) On weekends and New York state and federal holidays before nine a.m. and after six p.m.; or*

*(3) At any time in such a way as to create an unreasonable noise. For the purposes of this section unreasonable noise shall include but shall not be limited to an aggregate sound level of 75 dB(A) or more, attributable to the source or sources, as measured at any point within a receiving property. The provisions of paragraph (1) of this subdivision shall not apply to an employee of the department of parks and recreation or an agent or contractor of the department of parks and recreation who operates or uses or causes to be operated or used any lawn care device between the hours of seven a.m. and eight a.m. in any location more than three hundred feet from any building that is lawfully occupied for residential use. The distance of three hundred feet shall be measured in a straight line from the point on the exterior wall of such building nearest to any point in the location at which such lawn care device is operated or used or caused to be operated or used.*

*(b) No person shall operate or use or cause to be operated or used any leaf blower not equipped with a functioning muffler.*

*§24-243 Snow blowers. The provisions of this code shall not apply to the operation of a snow blower for the purpose of complying with subdivision a of section 16-123 of the administrative code.*

*§24-244 Sound reproduction devices. (a) Except as otherwise provided in section 10-108 of the code, no person shall operate or use or cause to be operated or used any sound reproduction device in such a manner as to create unreasonable noise.*

*(b) No person shall operate or use or cause to be operated or used any sound reproduction device, for commercial or business advertising purposes or for the purpose of attracting attention to any performance, show, sale or display of merchandise, in*

23

*connection with any commercial or business enterprise (including those engaged in the sale of radios, television sets, compact discs or tapes), (i) outside or in front of any building, place or premises or in or through any aperture of such building, place or premises, abutting on or adjacent to a public street, park or place; (ii) in or upon any vehicle operated, standing or being in or on any public street, park or place; (iii) from any stand, platform or other structure; (iv) from any airplane or other device used for flying, flying over the city; (v) from any boat on the waters within the jurisdiction of the city; or (vi) anywhere on the public streets, public sidewalks, parks or places where sound from such sound reproduction device may be heard upon any public street, sidewalk, park or place. Nothing in this section is intended to prohibit incidental sounds emanating from a sporting or an entertainment or a public event for which a permit under section 10-108 of the code has been issued.*

§11.  Paragraph (5) of subdivision (b) of section 24-257 of such code is amended to read as follows:

(5)  Impose a civil penalty in each instance in an amount as set out in table [V] *I* against any person who violates a provision of this code, or of any order, rule or regulation promulgated by the commissioner or the board. Each day during which such violation continues shall constitute a separate violation. The board may remit, in whole or in part, such a civil penalty if, at the conclusion of the hearing or at the time of the board determination under section 24-266 of this code, the respondent is no longer in violation of a provision of this code, or of any order, rule or regulation promulgated by the commissioner or the board;

§12.   Table V following paragraph (5) of section 24-257 of such code is REPEALED and a new table I is added following such paragraph (5) to read as follows:

### TABLE I

| | Civil Penalties | | | | | |
|---|---|---|---|---|---|---|
| *Violations related to section and subdivision* | *First Violation* | | *Second Violation** | | *Third and Subsequent Violations** | |
| | Maxi-mum | Mini-mum | Maxi-mum | Mini-mum | Maxi-mum | Mini-mum |
| *24-216 (d)* | 2,625 | 650 | 5,250 | 1,300 | 7,875 | 1,950 |
| *24-218* | 1,000 | 350 | 2,000 | 700 | 3,000 | 1,050 |
| *24-218.1* | 50 | 50 | 50 | 50 | 50 | 50 |
| *24-220* | 1,400 | 440 | 2,800 | 880 | 4,200 | 1,320 |
| *24-222* | 3,500 | 875 | 7,000 | 1,750 | 10,500 | 2,625 |
| *24-223* | 3,500 | 875 | 7,000 | 1,750 | 10,500 | 2,625 |
| *24-224* | 3,500 | 875 | 7,000 | 1,750 | 10,500 | 2,625 |
| *24-225* | 1,400 | 440 | 2,800 | 880 | 4,200 | 1,320 |
| *24-226* | 1,400 | 440 | 2,800 | 880 | 4,200 | 1,320 |
| *24-227* | 875 | 220 | 1,750 | 440 | 2,625 | 660 |
| *24-228* | 1,400 | 440 | 2,800 | 880 | 4,200 | 1,320 |
| *24-229* | 1,400 | 440 | 2,800 | 880 | 4,200 | 1,320 |
| *24-230* | 1,400 | 440 | 2,800 | 880 | 4,200 | 1,320 |
| *24-231 (a)* | 8,000 | 2,000 | 16,000 | 4,000 | 24,000 | 6,000 |
| *24-231 (b)* | 1,750 | 440 | 3,500 | 880 | 5,250 | 1,320 |
| *24-231 (c)* | 875 | 350 | 1750 | 700 | 2,625 | 1,050 |
| *24-232* | 1,400 | 440 | 2,800 | 880 | 4,200 | 1,320 |
| *24-233 (a)* | 175 | 50 | 350 | 100 | 525 | 150 |
| *24-233 (b) (1)* | 175 | 50 | 350 | 100 | 525 | 150 |

24

| | | | | | | |
|---|---|---|---|---|---|---|
| 24-233 (b) (2) | 350 | 100 | 700 | 200 | 1,050 | 300 |
| 24-234 | 175 | 50 | 350 | 100 | 525 | 150 |
| 24-235 | 175 | 50 | 350 | 100 | 525 | 150 |
| 24-236 (a) | 525 | 150 | 1050 | 300 | 1,575 | 450 |
| 24-236 (b) (c) (d) | 1,440 | 440 | 2,800 | 880 | 4,200 | 1,320 |
| 24-237 (a) | 1,000 | 150 | 2,000 | 300 | 3,000 | 450 |
| 24-237 (b) | 875 | 220 | 1,750 | 440 | 2,625 | 660 |
| 24-237 (c) | 875 | 220 | 1,750 | 440 | 2,625 | 660 |
| 24-237 (d) | 1,000 | 350 | 2,000 | 700 | 3,000 | 1,050 |
| 24-238 | 875 | 220 | 1,750 | 440 | 2,625 | 660 |
| 24-239 (b) | 350 | 100 | 700 | 200 | 1,050 | 300 |
| 24-241 | 1,400 | 440 | 2,800 | 880 | 4,200 | 1,320 |
| 24-242 | 875 | 220 | 1,750 | 440 | 2,625 | 660 |
| 24-244 | 1750 | 440 | 3,500 | 880 | 5,250 | 1,320 |
| 24-245 | 2,625 | 660 | 5,250 | 1,320 | 7,875 | 1,980 |
| *All remaining sections and subdivisions* | 875 | 220 | 1,750 | 440 | 2,625 | 660 |

\*       *By the same respondent of the same provision of law, order, rule or regulation and, if the respondent is the owner, agent, lessee or other person in control of the premises with respect to which the violation occurred, at the same premises (all violations committed within two years).*

§13.  Paragraph (3) of subdivision (c) of section 24-257 of such code is amended to read as follows:

(3) order any person not in possession of [a variance] *an after hours work authorization* issued pursuant to [subdivision (b) of section 24-224 ] *section 24-223* of this code to cease and desist from construction activities other than during the permissible hours specified in [subdivision (a) of section 24-224] *section 24-222* of this code and the board may also seal any device used in such construction activities;

§14.  Subdivision (f) of section 24-257 of such code is amended to read as follows:

(f)  (1) The board may order any person to cease and desist from an activity which it reasonably believes causes unreasonable noise which creates imminent peril to the public health and well being, or to cease and desist from an activity which it reasonably believes constitutes a willful or continued violation of any provision of this code or order or regulation, promulgated by the commissioner or board. Such order shall be effective upon service thereof. Any party affected by such an order may request a hearing on written notice, and he or she shall be afforded a hearing, within twenty-four hours after service of such request, pursuant to section 24-263 of this code. If such an accelerated hearing is not requested, then a hearing shall be afforded within ten days of the issuance of the order. The board shall issue its final decision and order thereon within three days from the conclusion of a hearing held pursuant to this subdivision.

[(2) The board may rescind in whole or in part a variance issued by an agency of the city of New York pursuant to subdivision (b)  of section 24-224 of this code.  Such order shall be effective upon service thereof upon such agency and upon the person to whom such variance was issued.]

§15.  Section 24-258 of such code is amended to read as follows:

§ 24-258  The board.  (a) The board shall be convened by the chairperson or in the chairperson's absence the assistant commissioner of [air resources] *environmental compliance*, or at the request of any three members thereof.

(b) If a member of the board has presided over the initial hearing, he or she shall not be disqualified from reviewing the hearing.

25

(c)  Five members of the board, at least two of who shall not be city officials, shall constitute a quorum.

§16.  All actions and proceedings, civil or criminal, or administrative proceedings commenced under or by virtue of any provision repealed by this local law and pending immediately prior to the taking effect of such repeal may be prosecuted and defended to final effect in the same manner as they might if such provisions were not so repealed.

§17.  On or prior to January 1, 2007 the commissioner of environmental protection shall promulgate noise mitigation rules in accordance with section 24-219 of the administrative code, as added by section 10 of this local law.

§18.  This local law shall take effect on July 1, 2007 provided that prior to such effective date agencies may promulgate rules or take other administrative actions necessary for the timely implementation of this local law including the appointment of any advisory committee and provided further that section 17 of this local law shall take effect immediately upon its enactment into law.

THE CITY OF NEW YORK, OFFICE OF THE CITY CLERK, s.s.:

I hereby certify that the foregoing is a true copy of a local law of the City of New York, passed by the Council on December 21, 2005 and approved by the Mayor on December 29, 2005.

VICTOR L. ROBLES, City Clerk of the Council

CERTIFICATION PURSUANT TO MUNICIPAL HOME RULE LAW §27

Pursuant to the provisions of Municipal Home Rule Law §27, I hereby certify that the enclosed Local Law (Local Law 113 of 2005, Council Int. No. 397-A) contains the correct text and:

Received the following vote at the meeting of the New York City Council on December 21, 2005:  47 for, 0 against, 0 not voting.

Was signed by the Mayor on December 29, 2005.

Was returned to the City Clerk on December 30, 2005.

JEFFREY D. FRIEDLANDER, Acting Corporation Counsel