14-CV-05668 (RRM)(RER)

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MUCHMORE'S CAFÉ, LLC,

                                                                            Plaintiff,

                                   -against-

CITY OF NEW YORK,

                                                                            Defendant.

---

**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF CROSS-MOTION FOR JUDGMENT
ON THE PLEADINGS AND IN OPPOSITON TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE
PLEADINGS**

---

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for the City of New York*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Ave Maria Brennan*
*Tel:  (212) 356-2188*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT

    POINT I

        PLAINTIFF LACKS STANDING TO ASSERT
        CLAIMS ON BEHALF OF MUSICIANS,
        PERFORMANCE DANCERS AND
        CUSTOMERS OF MUCHMORE'S ................................................... 4

    POINT II

        THE STATUTORY SCHEME REQUIRING
        THE LICENSING OF CABARETS IS NOT
        TRIGGERED BY PERFORMANCE DANCING
        OR THE PLAYING OF MUSIC ..................................................... 5

    POINT III

        RECREATIONAL DANCING IS NOT A
        CONSTITUTIONALLY PROTECTED RIGHT
        GUARANTEED BY THE FIRST
        AMENDMENT ............................................................................. 9

        No First Amendment Protection for Recreational
        Dance ......................................................................................... 9

        No Protected First Amendment Right to
        Assemble for Recreational Dance ......................................... 13

    POINT IV

        TO THE EXTENT THE AMENDED
        COMPLAINT ASSERTS A SUBSTANTIVE
        DUE PROCESS CLAIM, THE LICENSING
        REQUIREMENT FOR CABARETS IS
        RATIONAL AND REASONABLE ................................................ 15

**Page**

POINT V

    THE TERM "DANCING" IN THE
DEFINITION OF CABARET IS NOT
UNCONSTITUTIONALLY VAGUE OR
OVERBROAD ................................................................................. 23

POINT VI

    THE LICENSING SCHEME FOR CABARETS
DOES NOT VIOLATE THE EQUAL
PROTECTION CLAUSE.................................................................... 26

CONCLUSION................................................................................................. 29

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                          <u>Pages</u>

<u>Abusaid v. Hillsborough County Board,</u>
    637 F. Supp. 2d 1002 (M.D. Fla. 2007) ............................................................................ 12, 13

<u>America's Best Family Showplace Corp. v. City of New York,</u>
    536 F. Supp. 170 (S.D.N.Y. 1982) ................................................................................... 21-22

<u>Ashcroft v. Iqbal,</u>
    556 U.S. 662 (2009) ................................................................................................................ 28

<u>Barnes v. Glen Theatre, Inc.,</u>
    501 U.S. 560 (1991) ................................................................................................................ 11

<u>Boyce Motor Lines, Inc. v. United States,</u>
    342 U.S. 337 (1952) ................................................................................................................ 23

<u>Breard v. Alexandria,</u>
    341 U.S. 622 (1951) ................................................................................................................ 16

<u>Broadrick v. Oklahoma,</u>
    413 U.S. 601 (1973) ................................................................................................................ 25

<u>Chiasson v. New York City Dept. of Consumer Affairs,</u>
    132 Misc. 2d 640 (Sup. Ct. N.Y.Co. 1986) ........................................................................ 8, 9

<u>Chiasson v. New York City Dept. of Consumer Affairs,</u>
    138 Misc. 2d 394 (Sup. Ct. N.Y. Co. 1988) ................................................................... 6, 8, 9

<u>City of Cleburne v. Cleburne Living Ctr.,</u>
    473 U.S. 432 (1985) ................................................................................................................ 26

<u>City of Dallas v. Stanglin,</u>
    490 U.S. 19 (1989) ............................................................................................................ 11, 13

<u>City of Eastlake v. Forest City Enter., Inc.,</u>
    426 U.S. 668 (1976) ................................................................................................................ 16

<u>Clark v. Community for Creative Non-Violence,</u>
    468 U.S. 288 (1984) ................................................................................................................ 10

<u>Coates v. City of Cincinnati,</u>
    402 U.S. 611 (1971) ................................................................................................................ 24

<u>D.G. Restaurant Corp. v. City of Myrtle Beach,</u>
    953 F.2d 140 (4th Cir. 1991) ................................................................................................. 11

iii

**<u>Cases</u>**                                                                                                          **<u>Page</u>**

<u>Elam v. Bolling,</u>
   53 F. Supp. 2d 854 (W. D. Va. 1999) ...................................................................... 12

<u>Euclid v. Ambler Realty Co.,</u>
   272 U.S. 365 (1926) .............................................................................................. 16, 19

<u>Exxon Corp. v. Governor of Maryland,</u>
   437 U.S. 117 (1978) ...................................................................................................... 16

<u>Farrell v. Burke,</u>
   449 F.3d 470 (2d Cir. 2006) ........................................................................................ 25

<u>Festa v. New York City of Dept. of Consumer Affairs,</u>
   12 Misc. 3d 466 (Sup. Ct. N.Y. Co. 2006),
   <u>aff'd in part and modified in part,</u> 37 A.D.3d 343 (1st Dept.)
   <u>appeal dismissed,</u> 9 N.Y.3d 858 (2007) ........................................................ 8, 12, 21

<u>Grayned v. City of Rockford,</u>
   408 U.S. 104 (1972) ...................................................................................................... 23

<u>Harlen Assocs. v. Village of Mineola,</u>
   273 F.3d 494 (2d Cir. 2001) ........................................................................................ 26

<u>I.N.S. v. Chada,</u>
   462 U.S. 919 (1983) ...................................................................................................... 16

<u>Immediato v. Rye Neck Sch. Dist.,</u>
   73 F.3d 454 (2d Cir. 1996) .......................................................................................... 17

<u>Kemo, Inc. v. City of Long Beach,</u>
   47 Misc. 2d 185 (Sup. Ct. Nassau Co. 1965) .......................................................... 29

<u>Kiryas Joel Alliance v. Village of Kiryas Joel,</u>
   2011 U.S. Dist. LEXIS 137074 (S.D.N.Y.) ................................................................ 5

<u>Koch v. Yunich,</u>
   533 F.2d 80 (2d Cir. 1976) .......................................................................................... 17

<u>Lawrence v. Texas,</u>
   539 U.S. 558 (2003) ...................................................................................................... 14

<u>Lewis v. City of New York,</u>
   2013 U.S. Dist. LEXIS 180202 (E.D.N.Y.) (Mauskopf, J.),
   <u>aff'd,</u> 2015 U.S. App. LEXIS 1385 (2d Cir.) ............................................................ 1

| Cases | Page |
|---|---|

*Metropolitan Council, Inc. v. Safir,*
99 F. Supp. 2d 438 (S.D.N.Y. 2000)................................................................. 10

*Miller v. California,*
413 U.S. 15 (1973)............................................................................................ 23

*Mourning v. Family Publ'ns Serv., Inc.,*
411 U. S. 356 (1973).......................................................................................... 16

*Nebbia v. State of New York,*
291 U.S. 502 (1934).......................................................................................... 16

*Nectow v. City of Cambridge,*
277 U.S. 183 (1928).......................................................................................... 16

*New York City C.L.A.S.H., Inc. v. City of New York,*
315 F. Supp. 2d 461 (S.D.N.Y. 2004).............................................................. 10

*Roberts v. United States Jaycees,*
468 U.S. 609 (1984).......................................................................................... 13

*Rose v. Locke,*
423 U.S. 48 (1975)............................................................................................ 23

*Sanitation Recycling Indus., Inc. v. City of New York,*
107 F.3d 985 (2d Cir. 1997).............................................................................. 13

*Schad v. Borough of Mt. Ephraim,*
452 U.S. 61 (1981)............................................................................................ 19

*Spence v. Washington,*
418 U.S. 405 (1974).......................................................................................... 10

*Texas v. Johnson,*
491 U.S. 397 (1989).......................................................................................... 10

*United States v. Herrera,*
584 F.2d 1137 (2d Cir. 1978)....................................................................... 23 - 24

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,*
454 U.S. 464 (1982)............................................................................................ 5

*Village of Belle Terre v. Boraas,*
416 U.S. 1 (1974).............................................................................................. 19

**Cases**                                                                                    **Page**

Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,
    455 U.S. 489 (1982)........................................................................................... 24

Virginia v. Hicks,
    539 U.S. 113 (2003)........................................................................................... 25

Walker v. Kansas City,
    911 F.2d 80 (8th Cir.),
    reh'g denied en banc, 919 F.2d 1339 (1990),
    cert. denied, 500 U.S. 941(1991) ..................................................................... 12

Warth v. Seldin,
    422 U.S. 490 (1975)............................................................................................. 5

Williamson v. Lee Optical of Oklahoma, Inc.,
    348 U.S. 483 (1955)................................................................................... 16 - 17

Willis v. Town of Marshall,
    293 F. Supp. 2d 608 (W.D.N.C. 2003),
    aff'd in part and vacated in part, 426 F.3d 251 (4th Cir. 2005) ...................... 11 - 12

Yick Wo v. Hopkins,
    118 U.S. 356 (1886)........................................................................................... 26

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(c) ................................................................................................ 1

**Administrative Code of the City of New York**

Administrative Code § 20-101 ............................................................................. 7, 17

Administrative Code § 20-104(b)(6) ......................................................................... 18

Administrative Code § 20-104(g) ............................................................................. 13

Administrative Code § 20-359(1) ............................................................................... 7

Administrative Code § 20-359(3) ..................................................................... 6, 8, 24

Administrative Code § 20-360(a) .......................................................................... 6, 17

Administrative Code § 20-360(d) ............................................................................. 17

Administrative Code § 20-360.2 ............................................................................... 17

**Rules of the City of New York**                                                                  **Pages**

24 RCNY § 2-202 ........................................................................................................ 18

24 RCNY § 2-203 ........................................................................................................ 18

24 RCNY § 2-205 ........................................................................................................ 18

24 RCNY § 2-207 ........................................................................................................ 18

24 RCNY § 81.03(o) .................................................................................................... 26

24 RCNY § 81.05(c) .................................................................................................... 26


**Zoning Resolution of the City of New York**

Zoning Resolution § 12-10 ........................................................................................ 19

Zoning Resolution § 32-21 ............................................................................. 3, 19, 20, 21

### Preliminary Statement

Defendant the City of New York (the "City") submits this memorandum of law in support of its cross-motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings and in opposition to plaintiff's motion for the same relief.[1]

Plaintiff Muchmore's Café, LLC ("plaintiff" or "Muchmore's") is a domestic limited liability company with its principal place of business at the café and bar named Muchmore's located at 2 Havemeyer Street in Williamsburg, Brooklyn. Amended Complaint ("Am. Compl.") ¶¶4 and 42.[2] Plaintiff alleges that because the statutory scheme of the City requires the licensing of "cabarets" (eating and drinking establishments with dancing), it is "unable to permit dance performance or social dancing on the part of its customers, or to play or host music that might lead to dancing." Am. Compl. ¶50. Plaintiff alleges that the requirement to obtain a cabaret license if an eating or drinking establishment has dancing "unduly interferes with the First and Fourteenth Amendment rights of Muchmore's, the musicians that perform at Muchmore's or that would be permitted to perform at Muchmore's … and the customers of Muchmore's." Am. Compl. second ¶46.

At their core, plaintiff's claims are essentially based on two points: (i) This Court should reexamine the Supreme Court's holding that recreational dancing is not protected expression (based on plaintiff's legally unsupported argument that the holding only applies when

---

[1] This Court set forth the standards for a motion for judgment on the pleadings in <u>Lewis v. City of New York</u>, 2013 U.S. Dist. LEXIS 180202 at *7-8 (E.D.N.Y.) (Mauskopf, J.), <u>aff'd</u>, 2015 U.S. App. LEXIS 1385 (2d Cir.).

[2] The procedural history of this action and the relevant statutory and regulatory scheme, as well as relevant public documents, are set forth in the accompanying declaration of Ave Maria Brennan, dated April 24, 2015.

the recreational dancers are minors) and (ii) Certain types of music are only played by minority musicians, these types of music cause people to dance, and therefore the licensing requirement for eating and drinking establishments with dancing violates Equal Protection. In support of these basic positions, as well as ancillary ones in its motion for judgment on the pleadings, plaintiff repeatedly blurs and/or confuses the distinction between the performance of music (which is protected expression and which does not trigger the licensing requirement) and recreational dancing by patrons of Muchmore's (which would trigger the licensing requirement).[3] Similarly, plaintiff ignores that this action is a challenge to a licensing statute and repeatedly misstates that the City has prohibited dancing. Pl's Mem. at 4. Essentially all of plaintiff's legal arguments reflect this deficiency, and for this reason, as well as the reasons explained below in support of the City's cross-motion, plaintiff's motion should be denied and the defendant's cross-motion should be granted.

      As an initial matter, to the extent that plaintiff asserts claims on behalf of its patrons or of musicians who perform at Muchmore's, it does not have standing to do so.

      As explained hereinafter, the licensing requirement for cabarets is not triggered by performance dancing, only by recreational dancing by the patrons of an eating or drinking establishment. Accordingly, insofar as the First Cause of Action (Am. Compl. ¶¶52-53) is solely based on the mistaken allegation that the cabaret statutory scheme requires licensing of establishments that host "dance performances" it fails. Nor does the cabaret statutory scheme require licensing when musicians are playing any music in conjunction with a "dance

---

[3] For example, plaintiff describes its Second Cause of Action as "addressing social dancing and the impact of the Cabaret Law's social dancing ban on musical performance." (Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings ("Pl's Mem.") at 3) (emphasis added).

performance." For these reasons, judgment on the pleadings should be granted on the First Cause of Action and it should be dismissed.

The Second Cause of Action is entitled "Social Dancing" and is based on a purported constitutional right of patrons of Muchmore's to engage in recreational dancing. Am. Compl. ¶¶55-58. However, there is no protected First Amendment right of expression to engage in recreational dancing, nor is there a protected First Amendment right to assemble for the purpose of engaging in recreational dancing. Judgment on the pleadings should be granted here as well.

To the extent the amended complaint asserts a substantive due process claim, the licensing scheme for cabarets is rational and reasonable and is a valid exercise of the City's police power. The licensing requirement and the regulations promulgated regarding cabarets are reasonably related to the legitimate objective of protecting the health and safety of the people of the City. As well, Zoning Resolution § 32-21 (which classifies cabarets as Use Group 12) is rational and reasonable and a valid exercise of the City's police power.

Although not specifically articulated as a "Cause of Action," plaintiff also alleges that the statutory scheme is unconstitutionally vague insofar as it fails to define "dancing," as well as overbroad. Am. Compl. ¶¶31-32. As the word "dancing" is sufficiently clear to provide notice to an eating and drinking establishment of what activity by its patrons (here recreational dancing) triggers the requirement for it to be licensed as a cabaret, the statutory scheme is not unconstitutionally vague and therefore does not violate plaintiff's due process rights. Nor is the statutory scheme overbroad as it does not violate the First Amendment rights of hypothetical third parties if applied to them. For these reasons, to the extent the claims in the amended complaint assert a violation of the due process rights of Muchmore's or others, judgment on the

3

pleadings should be granted in favor of the City on these claims as well.

Plaintiff also attempts to allege an Equal Protection claim stating that the cabaret statutory and regulatory scheme has a "racially discriminatory impact, in that genres of music which are primarily performed by minority musicians, such as hip hop, salsa or merengue, are effectively rendered unlawful in more than 99% of the eating and drinking establishment[s] in the city of New York, while genres of music that are primarily performed by white musicians, such as classical rock or opera, are not similarly impacted." Am. Compl. ¶20. Plaintiff does not articulate exactly how the statutory scheme has a "racially discriminatory impact" or how hip hop, salsa or merengue are "effectively rendered unlawful." However, the statutory scheme as modified by relevant case law does not regulate either the type of music performed (or played) or the type or number of instruments played at an eating and drinking establishment. Therefore, whether the music is performed, or the instruments are played, by "minority musicians" or "white musicians" is irrelevant. Insofar at the statutory licensing scheme is only triggered by dancing at an eating and drinking establishment and not triggered by the playing of music, these allegations do not assert a viable Equal Protection claim and judgment on the pleadings should be granted in favor of the City on this claim as well.

## ARGUMENT
### POINT I
### PLAINTIFF LACKS STANDING TO ASSERT CLAIMS ON BEHALF OF MUSICIANS, PERFORMANCE DANCERS AND CUSTOMERS OF MUCHMORE'S

The amended complaint asserts claims not only on behalf of plaintiff itself, but also on behalf of musicians that perform at Muchmore's, musicians and dancers that would be permitted to perform at Muchmore's "but for the Cabaret Law" and customers of Muchmore's.

Am. Compl. second ¶46 and ¶47. However, plaintiff does not have standing to assert the rights of musicians, dancers and customers of Muchmore's.

A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975). <u>See also</u> <u>Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 474 (1982), <u>citing</u> <u>Warth</u>. Moreover, where "several of plaintiffs' allegations relate to injuries allegedly suffered by non-parties, … [they] therefore must be dismissed for lack of standing." <u>Kiryas Joel Alliance v. Village of Kiryas Joel</u>, 2011 U.S. Dist. LEXIS 137074 at *19 (S.D.N.Y.).

Therefore, to the extent that plaintiff asserts a claim on behalf of its customers, of musicians who perform at Muchmore's, and of musicians and dancers who would perform at Muchmore's "but for the Cabaret Law," it does not have standing to do so. Similarly, insofar as the amended complaint mentions in passing "public dance halls" (Am. Compl. ¶¶6, 9, 11, 21, 49), and insofar as Muchmore's is not a "public dance hall" but rather "a café and bar" (Am. Compl. ¶42), then plaintiff does not have standing to raise claims relating to "public dance halls."

## POINT II

### THE STATUTORY SCHEME REQUIRING THE LICENSING OF CABARETS IS NOT TRIGGERED BY PERFORMANCE DANCING OR THE PLAYING OF MUSIC

The First Cause of Action in the amended complaint is entitled "Dance Performance" and alleges that the licensing requirement for cabarets "prohibits Muchmore's and similar establishments from hosting dance performances, or to prohibit [sic] dancers from

performing…." Am. Compl. ¶53. However, the licensing requirement for cabarets is not triggered by performance dancing, but is only triggered by recreational dancing by the customers of Muchmore's. For this reason, judgment on the pleadings should be granted on the First Cause of Action in its entirety.

Sections of the Administrative Code of the City of New York ("Admin. Code") relate to the licensing of those who "conduct, maintain or operate, or engage in the business of conducting, maintaining or operating," among other things, a cabaret. Specifically, section 20-360(a) of the Admin. Code requires the licensing of cabarets by the Department of Consumer Affairs of the City of New York ("DCA"). Ex. 3.

Section 20-359(3) of the Admin. Code sets forth the definition of a "cabaret" as follows:

> 3. Any room, place or space in the city in which any musical entertainment, singing, dancing or other form of amusement is permitted in connection with the restaurant business or the business of directly or indirectly selling to the public food or drink, except eating or drinking places, which provide incidental musical entertainment, without dancing, either by mechanical devices, or by not more than three persons.

The portion of the "incidental music exception" to the definition of a "cabaret" that limited to three the number of musicians who can play at unlicensed establishments was held unconstitutional. Chiasson v. New York City Dept. of Consumer Affairs, 138 Misc. 2d 394, 398 (Sup. Ct. N.Y. Co. 1988) ("Chiasson II"). After Chiasson II, any number of musicians can play music at an eating or drinking establishment without being a "cabaret."[4] Important here, and leaving aside the number of musicians, the statutory exception for "eating or drinking places,

---

[4] The Admin. Code has not been revised to reflect the Court's ruling in Chiasson II.

which provide incidental musical entertainment, <u>without dancing</u>," remains (emphasis added).

The language defining a cabaret in the Admin. Code, as modified by <u>Chiasson II</u>, indicates that it only encompasses dancing by patrons of the cabaret, <u>i.e.</u>, recreational dancing. Indeed, Admin. Code § 20-101 sets forth the "Legislative Intent" regarding the licensing provisions set forth therein and states in relevant part that: "The council finds that … for the protection of the health and safety of the people of New York city and for other purposes requisite to promoting the general welfare, licensing by the department of consumer affairs is a necessary and proper mode of regulation with respect to certain … businesses …." Of relevance here, the business to be licensed is a cabaret (an eating or drinking establishment with dancing), thus ensuring the protection of the health and safety of its customers or patrons. As indicated by its name, DCA promotes the general welfare of "consumers" of certain businesses, not of performers who may perform at certain businesses. This articulated legislative intent reflects the intention that the definition of cabarets refers to dancing by consumers, <u>i.e.</u>, recreational dancers.

In support of its argument that the licensing requirement applies to "Dance Performance" (Pl's Mem. at 3), plaintiff argues simply that the "text of the Cabaret Law encompasses all dancing" while ignoring the articulated legislative intent of this enactment, <u>i.e.</u>, to protect the health and safety of the public (consumers (Admin. Code § 20-101), not dance performers.)[5] This intention is also reflected in the very term "public dance hall" (Admin. Code § 20-359(1)), <u>i.e.</u>, a place where the "public" dances, not where performance dancing occurs.

---

[5] Plaintiff also states that "at the pre-motion conference," the City's counsel "argued solely that, in practice, it [presumably the licensing requirement] had not generally been applied to dance performance." Pl's Mem. at 3. Insofar as the licensing requirement does not, and never did, apply to dance performance, this is a misstatement. Rather the City's counsel argued, as it does here, that dance performance is protected expression and the licensing requirement is inapplicable to dance performance.

Moreover, plaintiff's observation that no challenge appears to have been made to the licensing requirement for cabarets "as applied to dance performance" further illustrates this point – it does not apply to dance performance and the legislature never intended it to apply to dance performance. For this reason as well, the state court, when reviewing a challenge to the licensing requirement, had neither reason nor inclination to address its applicability to dance performance, as is was so obvious that dance performance was outside the scope of the statute. See Chiasson v. New York City Dept. of Consumer Affairs, 132 Misc. 2d 640 (Sup. Ct. N.Y. Co. 1986) ("Chiasson I"); Chiasson v. New York City Dept. of Consumer Affairs, 138 Misc. 2d 394, 398 (Sup. Ct. N.Y. Co. 1988) ("Chiasson II"); and Festa v. New York City Dept. of Consumer Affairs, 12 Misc. 3d 466 (Sup. Ct. N.Y. Co. 2006), aff'd in part and modified in part, 37 A.D.3d 343 (1st Dep't), appeal dismissed, 9 N.Y.3d 858 (2007).

In arguing that singing and/or other entertainment triggers licensing, plaintiff ignores the judicial modifications[6] of the definition of a cabaret and as a result, makes irrelevant arguments in attacking the licensing scheme. Pl's Mem. at 4-5. In Chiasson I, plaintiffs challenged the definition of "incidental musical entertainment"[7] which exempted those eating and drinking establishments with "incidental musical entertainment" from the cabaret licensing requirement. Plaintiffs argued that the definition was arbitrary and capricious and discriminated against them "because it excludes wind, brass and percussionist instrumentalists and limits the

---

[6] The definition of "cabaret" in Admin. Code § 20-359(3) was judicially modified by the state court in both Chiasson I and Chiasson II.

[7] "Incidental musical entertainment is defined as that which is provided 'either by mechanical devices, or by not more than three persons playing piano, organ, accordion or guitar or any stringed instrument or by not more than one singer accompanied by himself or a person playing piano, organ, accordion, guitar or any stringed instrument'…." Chiasson I at 641.

players to three." Chiasson I at 642. Chiasson I found that the "definition of incidental music …

which restricts the type of instruments to only guitar, piano, organ, accordion or any string

instrument is unconstitutional." Chiasson I at 646. Thereafter, in Chiasson II, the court found that

the "three-musician limitation restricts plaintiffs' freedom of expression and is therefore

unconstitutional." Chiasson II at 396.[8] It is thus clear that the licensing statute, as modified by

case law, is not triggered by musical entertainment, no matter what the type.

For these reasons, judgment on the pleadings should be granted in favor of the

City with respect to the First Cause of Action in its entirety.

**POINT III**

**RECREATIONAL DANCING IS NOT A CONSTITUTIONALLY PROTECTED RIGHT GUARANTEED BY THE FIRST AMENDMENT**

The Second Cause of Action alleges that "[t]o the extent the Cabaret Law

purports to prohibit social dancing and/or require Muchmore's and similarly situated

establishments to prohibit social dancing by their patrons … it violates the First and Fourteenth

Amendments" in that it abridges freedom of speech and of assembly. Am. Compl. ¶56. As

explained below, judgment on the pleadings should be granted in favor of the City and this cause

of action dismissed.

**No First Amendment Protection for Recreational Dance**

First, the statutory scheme regulating cabarets in no way prohibits recreational

dancing at Muchmore's. Nor does it require that Muchmore's prohibit recreational dancing.

Rather, it requires that Muchmore's obtain a cabaret license from DCA if Muchmore's seeks to

---

[8] The City "amended the incidental music exception … to eliminate the distinction as to the type of musical instruments permitted but retained the limitations pertaining to the number of musicians and instruments allowed." Chiasson II at 395.

offer recreational dancing, in addition to food and drink, to its patrons. There is no legal impediment preventing Muchmore's from applying for a cabaret license. Thus, insofar as the Second Cause of Action is based on the misstatement that the cabaret statutory scheme itself prohibits recreational dancing, judgment should be granted on the pleadings in favor of the City.

Second, to the extent the Second Cause of Action seeks to assert a claim that the licensing scheme unduly abridges freedom of speech and of assembly, as a matter of law, it does not. There is no constitutionally protected right to recreationally dance or to assemble for the purpose of recreational dancing. As stated by the Supreme Court, "whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play" depends on "whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" Texas v. Johnson, 491 U.S. 397, 404 (1989) (quoting Spence v. Washington, 418 U.S. 405, 410-11 (1974)). "[C]onduct is not converted into symbolic expression by intentions alone; instead, conduct must also 'reasonably be understood by the viewer to be communicative.'" Metropolitan Council, Inc. v. Safir, 99 F. Supp. 2d 438, 447 (S.D.N.Y. 2000) (quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 294 (1984)).

Moreover, as explained by the Court in New York City C.L.A.S.H., Inc. v. City of New York, 315 F. Supp. 2d 461, 478 (S.D.N.Y. 2004), "Courts that have found protectable expression in conduct have done so because the expressive component was the primary, if not the sole, purpose of the act." For example, as explained by the Court, "a person who burns the American flag at a political rally … is driven predominantly by his or her desire to make a statement, to voice an opposition and take a stand on a cause concerning which the flag in flames manifests the relevant sentiments of the actor." Id.

As recognized by the Supreme Court in City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989), not all activity is expressive conduct deserving constitutional protection:

> It is possible to find some kernel of expression in almost every activity a person undertakes -- for example, walking down the street or meeting one's friends at a shopping mall -- but such a kernel is not sufficient to bring the activity within the protection of the First Amendment. We think the activity of these dance-hall patrons -- coming together to engage in recreational dancing -- is not protected by the First Amendment.

In Barnes v. Glen Theatre, Inc., 501 U.S. 560, 570 (1991), a case involving not recreational dancing but nude performance dancing, the Supreme Court restated its observation in Stanglin that is quoted above. Then, in a concurring opinion, Justice Souter explicitly wrote: "Not all dancing is entitled to First Amendment protection as expressive activity. This Court has previously categorized ballroom dancing as beyond the Amendment's protection (citation to Stanglin at 24-25 omitted), and dancing as aerobic exercise would likewise be outside the First Amendment's concern." Barnes, 501 U.S. at 581.

Other federal courts, following Stanglin, have found that recreational dancing is not expressive conduct. See, D.G. Restaurant Corp. v. City of Myrtle Beach, 953 F.2d 140, 144 (4th Cir. 1991) citing Stanglin ("It has been held that recreational dancing, although containing a 'kernel' of expression, is not conduct which is sufficiently communicative to bring it within the protection of the First Amendment."); Willis v. Town of Marshall, 293 F. Supp. 2d 608, 616-17 (W.D.N.C. 2003), aff'd in part and vacated in part, 426 F.3d 251 (4th Cir. 2005) ("The Supreme Court has explicitly held that 'recreational dancing … is not protected by the First Amendment.' Likewise, the Fourth Circuit has held that 'recreational dancing, although containing a "kernel" of expression, is not conduct which is sufficiently communicative to bring it within the protection of the First Amendment.' These two cases defeat Plaintiff's claim that there is an

11

unresolved issue as to whether recreational dancing is protected by the First Amendment; it is not." (citing Stanglin and D.G. Restaurant); Walker v. Kansas City, 911 F.2d 80, 88 (8th Cir.), reh'g denied en banc, 919 F.2d 1339 (1990), cert. denied, 500 U.S. 941 (1991) ("Expressive activity of the sort that activates First Amendment protections, the [Stanglin] court held, ballroom dancing is not.") The New York State court similarly found recreational dance not protected expression under the New York State Constitution. Festa v. New York City Dept. of Consumer Affairs, 12 Misc. 3d 466 (Sup. Ct. N.Y. Co. 2006), aff'd in part and modified in part, 37 A.D.3d 343 (1st Dep't), appeal dismissed, 9 N.Y.3d 858 (2007).

Plaintiff's attempt to distance itself from the holding in Stanglin by simply stating that it "did not address the rights of musicians or live music establishments, the rights of adults, a law targeted at expression, or as broad as the Cabaret Law" (Pl's Mem. at 6), fails. First, the licensing requirement is not triggered by any of these factors. Second, the Supreme Court has never wavered from that holding. As well, plaintiff's reliance on Elam v. Bolling, 53 F. Supp. 2d 854 (W. D. Va. 1999) and Abusaid v. Hillsborough County Bd., 637 F. Supp. 2d 1002 (M.D. Fla. 2007) is inappropriate (Pl's Mem. at 8-9). Neither case supports plaintiff's position that recreational dance is or should be protected First Amendment speech. In fact, in Elam the court specifically stated: "While this court may question the wisdom of concluding that all recreational dancing is unprotected by the First Amendment, for the reasons discussed below this court need not rely upon whether or not recreational dancing, is, or should be, so protected." Elam, 53 F. Supp. 2d at 859. Instead, Elam turned on factors such as performance dance, the Town's "professed interest in regulating the consumption of alcohol" and its aim to "control[] the perceived evils associated with dancing." Id. at 861. In Abusaid, unlike at Muchmore's, the

12

"business also involve[d] the promotion, production, and presentation of some measure of expressive dances or musical or other expressive performances sufficient to implicate First Amendment concerns." Abusaid, 637 F. Supp. 2d at 1022. Also, while the challenged statute in Abusaid contained a "blanket exclusion … of one convicted of 'any felony'" (id. at 1024), the Admin. Code does not. Rather, Admin. Code § 20-104(g) gives discretion to the Commissioner to deny or grant an application for the issuance or renewal of a cabaret license.

**No Protected First Amendment Right to Assemble for Recreational Dance**

Similarly, there is no protected First Amendment right to assemble for the purpose of engaging in recreational dance. The Supreme Court has recognized two distinct aspects of freedom of association, neither of which is implicated here. As recognized in Roberts v. United States Jaycees, 468 U.S. 609, 617-18, 620-21 (1984), the First Amendment protects the ability to enter into and maintain "intimate" relationships and, thus, relationships with "such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship," as for example family relationships but not "large business enterprises." Also protected is an individual's right to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for redress of grievances, and the exercise of religion. Id. at 618; Sanitation Recycling Indus., Inc. v. City of New York, 107 F.3d 985, 996-97 (2d Cir. 1997).

Given the public nature of Muchmore's, it is clear that, while in attendance at the café and bar, patrons are not engaging in "intimate human relationships," as described by the Supreme Court in Roberts. The Supreme Court has also held that there is no First Amendment right to a "generalized right of 'social association'" and that the activity of dance-hall patrons is not a form of "expressive association." Stanglin, 490 U.S. at 25. As recreational dancing is not

13

protected as either a form of "intimate association" or "expressive association," plaintiff does not have a viable First Amendment freedom of association claim and the claim fails as a matter of law.

In support of its "Right to Associate" claim, plaintiff relies on Lawrence v. Texas, 539 U.S. 558 (2003) wherein it argues, the Supreme Court "expanded its protection of intimate human relationships." Pl's Mem. at 14-15. In Lawrence, the question before the Court was "the validity of a Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct." Lawrence, 539 U.S. at 562. Plaintiff misses the point here when it concludes, therefore, that the "associational rights of black and white musicians and patrons to create music and associate together is entitled of protection." Pl's Mem. at 15. The scheme challenged here places no limitation on who can associate or the purpose of the association, it just requires that a food or drinking establishment with dancing be licensed. All musicians or patrons at Muchmore's can associate together and create music without a license as the licensing requirement is not triggered by these activities. The licensing requirement does not impact a protected First Amendment activity.

Nor is the licensing requirement a prior restraint of protected activity or speech, much less an impermissible restraint. Pl's Mem. at 15-16. The cases upon which plaintiff relies all pertain to the exercise of established First Amendment freedoms, e.g., freedom of the press. This case challenges a licensing scheme that is triggered by recreational dancing, which is not protected expression. Here, the City does not limit free expression, notwithstanding plaintiff repeatedly, and without legal support, stating that it does.

Similarly, in a broad stroke attempt to buttress its argument that the statutory scheme violates the First Amendment, plaintiff also argues that it has "hosted political debates,

14

which strike at the core of First Amendment protection." Pl's Mem. at 7. However, the statutory scheme does not require licensing for political debates, just eating and drinking establishments with dancing. Thus, nothing in the challenged statute in any way impacts plaintiff's First Amendment rights.

Further, plaintiff attempts to "bootstrap" onto this claim yet another First Amendment claim on behalf of not only itself, but also on behalf of patrons and also musicians alleging that because of the cabaret licensing scheme they cannot play "genres of music that might lead to dancing" and that this "unduly interferes" with their "First Amendment and Fourteenth Amendment rights." Am. Compl. second ¶46. First, the cabaret licensing scheme is not triggered by the playing of any particular genre of music. Second, even if certain genres of music are more susceptible to dancing by patrons when played, those patrons clearly do not have a protected constitutional right to engage in recreational dancing. Therefore, the claim that musicians cannot play the type of music that might lead to dancing does not rise to a violation of their constitutional rights or that of any patron of Muchmore's (to the extent such a claim is pleaded).

## POINT IV

### TO THE EXTENT THE AMENDED COMPLAINT ASSERTS A SUBSTANTIVE DUE PROCESS CLAIM, THE LICENSING REQUIREMENT FOR CABARETS IS <u>RATIONAL AND REASONABLE</u>

The licensing requirement for cabarets is a valid exercise of the police power of the City and does not violate plaintiff's due process rights. The amended complaint does not properly plead a substantive due process claim (it does not use the term "substantive due process"), nevertheless in plaintiff's motion, plaintiff argues that "the Cabaret Law should also

be invalidated under the doctrine of substantive due process…." See Pl's Mem. Point III. Thus, while it is unclear what due process violation is alleged in the amended complaint, to the extent the Court construes it to be a substantive due process claim, plaintiff's claim fails as a matter of law.

Legislation enacted pursuant to the government's police power carries a strong presumption of validity. I.N.S. v. Chada, 462 U.S. 919, 944 (1983). Such legislation will be struck down as a violation of substantive due process only if the Court finds that it "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health … safety or … welfare." Nectow v. City of Cambridge, 277 U.S. 183 (1928), quoting Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (1926); see also City of Eastlake v. Forest City Enter., Inc., 426 U.S. 668, 676 (1976). A city's ability to regulate business embodied within its police power is broad in scope. "The Constitution's protection of property rights does not make a state or city impotent to guard its citizens against the annoyances of life because the regulation may restrict the manner of doing a legitimate business … even a legitimate occupation may be restricted or prohibited in the public interest." Breard v. Alexandria, 341 U.S. 622, 631 (1951). "Certain kinds of business may be prohibited; and the right to conduct a business, or to pursue a calling, may be conditioned." Nebbia v. State of New York, 291 U.S. 502, 528 (1934).

In evaluating a legal challenge, the court may not weigh the wisdom of the legislation. Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 124 (1978). Nor may the court "speculate as to whether … the evil sought to be remedied could better have been regulated in some other manner." Mourning v. Family Publ'ns Serv., Inc. 411 U.S. 356, 378 (1973). In short, "[i]t is enough that there is an evil at hand for correction, and that it might be thought that the

particular legislative measure was a rational way to correct it." Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 488 (1955).

In analyzing a substantive due process claim, "the level of scrutiny with which [a court] will examine a governmental regulation turns on the nature of the right at issue." Immediato v. Rye Neck Sch. Dist., 73 F.3d 454, 461 (2d Cir. 1996). Where, as here, the claimed right (to recreationally dance) is not fundamental, "the governmental regulation need only be reasonably related to a legitimate state objective." Id. See Koch v. Yunich, 533 F.2d 80, 84 (2d Cir. 1976) ("the substantive due process test applicable ... in the area of social and economic legislation is whether the challenged law has a rational relation to a valid state objective.")

Section 20-101 of the Admin. Code (Ex. 3) sets forth the legislative intent of the licensing requirement of certain activities, trades, businesses and industries such as cabarets, in relevant part, as follows:

> Legislative Intent. The council finds that for the protection and relief of the public from deceptive, unfair and unconscionable practice, for the maintenance of standards of integrity, honesty and fair dealing among persons and organizations engaging in licensed activities, for the protection of the health and safety of the people of New York city and for other purposes requisite to promoting the general welfare, licensing by the department of consumer affairs is a necessary and proper mode of regulation with respect to certain trades, businesses and industries.

Admin. Code § 20-360(a) and (d) requires that operators of cabarets be licensed and fingerprinted. Section 20-360.2 of the Admin. Code, entitled "Additional security measures for cabarets and public dance halls" requires, among other things, that cabarets equip entrances and exits used by patrons with digital video surveillance cameras. This section also sets forth detailed requirements for the digital video surveillance cameras. Ex. 3.

Admin. Code § 20-104(b)(6) empowers the DCA commissioner to "promulgate, amend and rescind regulation and rules … with respect to licensed activities, to protect the health, safety, convenience and welfare of the general public…." Ex. 3. In this vein, the promulgated regulations regarding cabarets, among other things, require the cabaret to be accessible to authorities (see Title 6 of the Rules of the City of New York ("RCNY") § 2-202) and that entrances and exits be unlocked (§ 2-203), discuss the protocol for hiring security guards (§ 2-205) and the exercise of proper care and responsibility for crowd control (§ 2-207). All these rules are tied to the public health, safety and general welfare. Ex. 4.

The statutory and regulatory scheme regarding cabarets is reasonably related to the legitimate state objective of protecting the health and safety of the people of the City and promoting the general welfare of those people. Customers of eating and drinking establishments with dancing, i.e., cabarets, are protected by the requirement that the proprietors of these establishments are licensed and thereby subject to DCA regulations. In turn, the regulations ensure that, among other things, entrances and exits remain unlocked while there are patrons on the premises (a fire-safety measure) and security guards are present and these guards are identified on a roster. The regulatory scheme also protects the health, safety and general welfare not just of the patrons of the cabaret, but also of the general public, by requiring crowd control measures and maintaining video surveillance cameras at all entrances and exits. For example, a

> cabaret shall exercise proper care and responsibility in supervising crowd control in the areas adjacent to the cabaret's entrance. A cabaret shall make a good faith effort to ensure that the crowd awaiting admission to or leaving the premises does not cause excessive noise or litter or behave in a manner that would disturb the public peace or safety.

Title 6 RCNY § 2-207. Ex.4.

Although not explicitly challenged in this lawsuit, the amended complaint also references a zoning provision of the City that regulates where cabarets may be located. Am. Compl. ¶12. Thus, in New York City, both the licensing scheme set forth in the Admin. Code, as well as the provisions of Zoning Resolution of the City ("ZR"), work hand in hand to regulate cabarets. Municipalities have been accorded broad powers to control land use through zoning laws that are "rationally related to legitimate state concerns and [do] not deprive the owner of economically viable use of his property." Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 68 (1981). Zoning laws will be upheld if reasonable and if they find their justification in some aspect of the police power asserted for the public welfare. See, Village of Belle Terre v. Boraas, 416 U.S. 1 (1974); Euclid v. Ambler Realty Co., 272 U.S. 365 (1926).

The ZR classifies and lists all permissible uses of land in "Use Groups" and specifies in which zoning districts the various Use Groups may be located.[9] The uses listed in each Use Group have common functional or nuisance characteristics. As with the Admin. Code provisions, ZR § 32-21 (which describes "Use Group 12" and limits those uses to certain zoning districts) is a valid exercise of the City's police power. Ex. 5. Important here, the determination to specify cabarets (eating or drinking establishments with dancing) as Use Group 12 also reflects the City's aim to protect the public's health, safety and welfare.

Use Group 12 consists primarily of "fairly large entertainment facilities that: (1) have a wide service area and generate considerable pedestrian, automotive or truck traffic; and

---

[9] A "use" as defined in the ZR is "(a) any purpose for which a building or other structure or an open tract of land may be designed, arranged, intended, maintained or occupied; or (b) any activity, occupation, business or operation carried on, or intended to be carried on, in a building or other structure or on an open tract of land." ZR § 12-10. Ex. 5.

(2) are, therefore, appropriate only in secondary, major or central commercial areas." ZR § 32-21. Ex. 5. Examples of Use Group 12 stores/establishments are bowling alleys, skating rinks, and retail stores like book stores, delicatessens and music stores. Id. Eating or drinking establishments with entertainment and a capacity of more than 200 persons or establishments with dancing are also classified as Use Group 12. Id.

In 1989, the New York City Planning Commission ("CPC") issued a Report and Resolution approving the amendment of certain sections of the ZR, including section 32-21. Ex. 6. That Report stated, in a section entitled "Consideration," that the amendment which imposed more restrictive regulations on establishments with dancing was "based on sound planning principles" and that it would "reduce conflicts that these establishment create with nearby residential uses." CPC Report at 21-22.

Moreover, with regard to "Large Clubs or Any Establishment With Dancing" the CPC Report stated, among other things, the following:

> The Commission has considered arguments that the proposal would encourage the establishment of illegal clubs by overly restricting the areas where new clubs could open, and that the clubs are essential to new musicians and various segments of the City's population. The Commission concurs that nightclubs and dancing establishments serve an important role in the cultural life of this city. They should not only be accepted, but encouraged. At the same time, they should be good neighbors at appropriate locations. In addition to the existing entertainment establishments that are "grandfathered," and can legally continue to operate at existing locations, future additional demand for large clubs and all establishments with dancing will be easily accommodated in the many districts and vast areas which will continue to permit such establishments as-of-right in all boroughs. In addition, very substantial additional areas are potential sites, subject to a special permit after review of possible impacts by the Board of Standards and Appeals.

Id. at 29-30.

The CPC Report also states the following regarding "public dance halls":

> The Commission has retained the earlier proposal to delete all references to public dance halls from Use Group 12. It is the Commission's belief that public dance halls which also serve food or beverages constitute eating or drinking establishments with dancing and that there is no reason to maintain public dance halls as a separate use, as they invariably serve food or drink. Therefore, "public dance halls" has been eliminated to simplify the Zoning Resolution. We note that the Administration has submitted legislation to the City Council that would, consistent with this zoning change, amend the Administrative Code to repeal all references to public dance halls. These establishments are currently licensed by the Department of Consumer Affairs.

Id. at 29.[10]

As explained above, ZR § 32-21 reflects the sound legislative determination to site eating and drinking establishments with dancing in zoning districts more suited to that use. Moreover, the New York State court found that the Use Group 12 classification of eating and drinking establishments with dancing is "a reasonable exercise of the police power and bear[s] a substantial relationship to the health, safety and general welfare of New Yorkers." Festa v. New York City of Dept. of Consumer Affairs, 12 Misc. 3d 466, 483 (Sup. Ct. N.Y. Co. 2006), aff'd in part and modified in part, 37 A.D.3d 343 (1st Dep't), appeal dismissed, 9 N.Y.3d 858 (2007).

Important here, the ZR does not preclude the operation of a cabaret at Muchmore's. However, even where a plaintiff brought an "action because the City's regulatory scheme effectively preclude[d] it from obtaining a license to operate its restaurant in accord with its video game plan", the federal court found no substantive due process violation. America's Best Family Showplace Corp. v. City of New York, 536 F. Supp. 170, 171 (S.D.N.Y. 1982). In

---

[10] The Admin. Code was not amended to reflect this suggested change that would be consistent with the ZR. DCA does not issue licenses for public dance halls. Ex. 7.

America's Best, the plaintiff challenged the constitutionality of various New York City zoning and licensing laws that regulated coin operated video games. Plaintiff was unable to obtain a license issued by the DCA to operate an "arcade" because the ZR did not permit the arcade "use" in the zoning district where plaintiff's restaurant was located. The court found that "the regulatory scheme is substantially related to the legitimate governmental objectives of protecting commercial development against congestion, promoting the most desirable use of land in accord with a well-considered plan, encouraging stability of commercial development, preserving the character of commercial districts and their peculiar suitability for particular uses, and protecting the health, safety, and welfare of the public at large." Id. at 174. Moreover, as in America's Best, "the City has not attempted to zone out an economic activity. Rather, it has engaged in a reasonable exercise of its police power by enacting legislation to regulate, and not totally prohibit" the challenged activity. Id. at 174-75.

   Plaintiff's substantive due process argument is based upon the contention that the licensing requirement "cannot be plausibly explained by anything other than the City's bare desire to harm black musicians…." (Pl's Mem. at 24.) This argument is based on the same implausible contention used to support the Equal Protection claim, that only minority musicians play certain genres of music, that these genres of music cause people to dance, and therefore the licensing requirement is unconstitutional. None of the cases cited by plaintiff in support of its substantive due process argument support this claim.

   For these reasons, judgment on the pleadings should be granted in favor of the City on substantive due process grounds as well.

## POINT V

**THE TERM "DANCING" IN THE DEFINITION OF CABARET IS NOT UNCONSTITUTIONALLY VAGUE OR OVERBROAD**

Plaintiff also alleges that the "Cabaret Law is unconstitutionally vague" because it "fail[s] to define 'dancing' in a way that would allow a reasonable person to distinguish between unlawful dancing and ostensibly lawful conduct such as swaying or head nodding...." Am. Compl. ¶32. In fact, the use of the term "dancing" in the definition of "cabaret" comports with due process and the definition of "cabaret" should not be declared unconstitutional on this ground.

To comport with due process and withstand a charge of being void for vagueness, a provision of law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). The courts have stressed, however, that mathematical precision in statutory language is not required. Rose v. Locke, 423 U.S. 48 (1975). See Miller v. California, 413 U.S. 15, 28 (1973) (absolute "god-like precision" not required by the Constitution). "[F]ew words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variation in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which the legislators can spell out prohibitions." Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340 (1952).  In United States v. Herrera, 584 F.2d 1137, 1149 (2d Cir. 1978), the Second Circuit explained that the "prohibition against excessive vagueness does not, however, invalidate every statute which a reviewing court believes could have been drafted with greater precision. ... All the Due Process

clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden…."

Moreover, where, as here, because no constitutionally protected conduct is implicated, plaintiff must demonstrate that the challenged statute is so vague that "no standard of conduct is specified at all." Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 n.7 (1982) quoting Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971). Here, there is a specified "standard of conduct," i.e., dancing, a term and activity that can be understood by a person of ordinary intelligence. Therefore, when evaluated against this lower standard, it is clear that the definition of "cabaret" in section 20-359(3) of the Admin. Code is not impermissibly vague because it does not also define the term "dancing."

Plaintiff argues that the statute is vague because of the "exception of 'incidental' musical entertainment." However, this argument ignores the language of the statute that links the so-called "incidental music entertainment" exception only to food or drinking establishments without dancing ("except eating or drinking, places, which provide incidental musical entertainment, without dancing"). If there is no recreational dancing, then even if there is "incidental music entertainment", then there is no licensing requirement. Similarly, notwithstanding the term "other form of amusement" which plaintiff also argues is vague, without dancing at an eating or drinking establishment, there is no licensing requirement.

Plaintiff also alleges that the statutory scheme is "unconstitutionally overbroad" because it requires that a license be obtained "prior to allowing dancing, or the playing or performance of music that might lead to dancing, without being narrowly tailored to serve a significant governmental interest…." Am. Compl. ¶31. First, the statutory scheme as modified by case law, is silent as to "music" and the licensing requirement for a cabaret (an eating or

drinking establishment with dancing) is only triggered by patrons dancing, not by the playing of music. Second, the claim of a party alleging overbreadth is "that although a statute did not violate his or her First Amendment rights, it would violate the First Amendment rights of hypothetical third parties if applied to them." Farrell v. Burke, 449 F.3d 470, 498 (2d Cir. 2006). Here, plaintiff alleges that the licensing requirement does, in fact, violate its rights.  Moreover, "[i]n order to prevail on an overbreadth challenge, 'the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" Id. at 499 (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973)). The "purpose of an overbreadth challenge is to prevent the chilling of constitutionally protected conduct, as prudent citizens will avoid behavior that *may* fall within the scope of a prohibition, even if they are not entirely sure whether it does." Farrell, 449 F.3d at 499 (emphasis in original). Here, there is simply no constitutionally protected right of the patrons of plaintiff to recreationally dance and therefore, there can be no "chilling" of a constitutionally protected right. Important as well, even if the patrons of plaintiff do recreationally dance, they are not violating the statute, as it is only plaintiff that is required to be licensed, not the patrons of the plaintiff's establishment.

Plaintiff now relies on language from Virginia v. Hicks, 539 U.S. 113, 118-19 (2003), quoting Broadrick, ("showing that a law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep'") in its effort to show the alleged overbreadth of the licensing statute. However, plaintiff never follows up to illustrate what "protected free speech" is impacted by the licensing requirement for purposes of plaintiff's overbreadth claim. Pl's Mem. at 17. The point of plaintiff's reference to the approximate number of eating and drinking establishments (25,100) versus the number of cabaret licenses (118) in existence in the City is unclear. In particular, plaintiff's reliance on this statistic is misplaced as it

assumes with no support that every eating and drinking establishment,[11] most commonly a restaurant although it also includes school cafeterias, senior centers, soup kitchens, etc., wants to have dancing in addition to food and drink. This is implausible.

Ultimately, plaintiff's overbreadth argument is unavailing because it, too, is based on the incorrect assumption that dancing is protected expression. Plaintiff's reliance on a quote from Broadrick ("First Amendment needs breathing space") illustrates how plaintiff misses the mark and also how plaintiff again tries to rely on protected expression (music) in arguing overbreadth. Pl's Mem. at 18. Plaintiff chooses to ignore, once again, that only dancing in an eating or drinking establishment triggers the licensing requirement, not music or singing. Id.

## POINT VI
## THE LICENSING SCHEME FOR CABARETS DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE

"The Equal Protection Clause requires that the government treat all similarly situated people alike." Harlen Assocs. v. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)(citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). This principle protects against the selective enforcement of laws applied "with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances...." Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886).

---

[11] Eating and drinking establishments are licensed by the New York City Department of Health and Mental Hygiene as "food service establishments." A "food service establishment" is defined as "a place where food is provided for individual portion service directly to the consumer whether such food is provided free of charge or sold, and whether consumption occurs on or off the premises or is provided from a pushcart, stand or vehicle." 24 RCNY § 81.03(o). Ex. 8 "[N]o person shall operate a food service establishment ... without a permit therefor issued by the Commissioner [of the Department of Health and Mental Hygiene]." 24 RCNY § 81.05(c). Ex. 8. Plaintiff has a "Permit/License Food Service Establishment (General) License." Ex. 9.

Plaintiff alleges that the cabaret statutory and regulatory scheme has a "racially discriminatory impact, in that genres of music which are primarily performed by minority musicians, such as hip hop, salsa or merengue, are effectively rendered unlawful in more than 99% of the eating and drinking establishment[s] in the City, while genres of music that are primarily performed by white musicians, such as classical rock or opera, are not similarly impacted." Am. Compl. ¶20.

On its face, the statutory scheme (as modified by case law) does not regulate either the type of music performed, the type or number of instruments played or the race of musicians who perform any type of music or play any particular instrument. These factors, along with the race of musicians performing, are irrelevant. The statutory scheme treats all "eating and drinking establishments with dancing" (i.e., cabarets) alike in that they are all required to be licensed by DCA. There is no distinction in the statute based on race or any other suspect classification. Therefore, these allegations do not state an Equal Protection claim.

Moreover, while not explicitly articulated, it appears that plaintiff's Equal Protection claim rests on the following tenuous "logic": (1) hip hop, salsa and merengue are genres of music performed by minority musicians (Am. Compl. ¶20); (2) hip hop, salsa and merengue are conducive to dancing (id. ¶44); (3) dancing at an eating and drinking establishment requires a cabaret license; (4) the licensing requirement discriminates on the basis of race because only minority musicians are affected as they are the only musicians to play hip hop, salsa and merengue which may result in recreational dancing; (5) therefore, there is an Equal Protection violation of the rights of Muchmore's, as well as Muchmore's musicians and patrons. To allege that because some music may be conducive to dancing, thus triggering the licensing requirement at an eating and drinking establishment, and that the music allegedly conducive to

dancing is "primarily performed by minority musicians" is an implausible argument that does not rise to a denial of Equal Protection. Moreover, it is based entirely on the allegation that the only musicians in New York City that play hip hop, salsa or merengue music are "minority musicians." This is simply not plausible, and therefore, judgment on the pleadings is warranted. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (to survive a motion to dismiss, a complaint must contain "sufficient factual matter … to state a claim to relief that is plausible on its face.")

Plaintiff's own argument that the current licensing requirement violates Equal Protection because the original "text and legislative history" of the 1926 enactment was "targeted at black musicians and inter-racial association" and "targeted wind, brass and percussion instruments, commonly used in jazz music while permitting piano, organ accordion, guitar and stringed instruments" (Pl's Mem. at 20) itself illustrates the argument's blatant deficiency. The very language in the legislative history upon which plaintiff relies regarding types of instruments as "evidence" of discriminatory intent has been judicially carved out of the licensing scheme. Whatever the intent was in including that language in 1926 is now irrelevant. This is especially so because the second prong of plaintiff's Equal Protection argument (racially disproportionate impact) is based on the implausible contention that only minority musicians play music that causes patrons to dance. In any event, notwithstanding the implausibility of this contention, plaintiff does not argue that the legislative history supports the contention upon which the Equal Protection argument is based, i.e., that only minority musicians play music that causes patrons to dance.

Plaintiff's argument regarding a "compelling state interest" for purposes of its Equal Protection claim also misses the mark (Pl's Mem. at 21-22). As plaintiff itself argues, this analysis starts with "the exercise of fundamental rights protected by the First Amendment…."

Here, there is no fundamental right to recreationally dance or to associate for the purpose of recreational dance protected by the First Amendment. Moreover, in <u>Kemo, Inc. v. City of Long Beach</u>, 47 Misc. 2d 185, 186 (Sup. Ct. Nassau Co. 1965), relied upon by plaintiff herein, the plaintiff was granted an injunction restraining enforcement of an ordinance that made it unlawful for supper clubs to have entertainment, music or other similar activity (<u>i.e.</u>, protected expression) during certain hours, while allowing the prohibited activity at hotels and catering establishments. Here, all eating and drinking establishments with dancing must be licensed.

## **CONCLUSION**

For all these reasons, as a matter of law, the City's cross-motion for judgment on the pleadings should be granted and the amended complaint dismissed in its entirety.

Dated:      New York, New York
            April 24, 2015

ZACHARY W. CARTER
Corporation Counsel of the City of New York
Attorney for the Defendant
100 Church Street, Room 5-162
New York, New York 10007
(212) 356-2188

By:   *Ave Maria Brennan*

        AVE MARIA BRENNAN
        Assistant Corporation Counsel