14-CV-05668 (RRM)(RER)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MUCHMORE'S CAFÉ, LLC,

                                                    Plaintiff,

-against-

CITY OF NEW YORK,

                                                    Defendant.

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF CROSS-MOTION
FOR JUDGMENT ON THE PLEADINGS**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York
Attorney for the City of New York
100 Church Street
New York, N.Y. 10007*

*Of Counsel: Ave Maria Brennan
Tel: (212) 356-2188*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT .............................................................................. 1

ARGUMENT

    POINT I

        THE CITY DID NOT ARGUE THAT PLAINTIFF LACKS STANDING TO ASSERT CLAIMS ON ITS OWN BEHALF; IT LACKS STANDING TO ASSERT CLAIMS OF OTHERS ................................................................................. 3

    POINT II

        THERE IS NO PROTECTED FIRST AMENDMENT RIGHT TO RECREATIONALLY DANCE ......................................................................... 5

        A. Recreational Dancing is Not Expression Constitutionally Protected by the First Amendment ................................................................................. 5

        B. The O'Brien Analysis Is Inapplicable As Recreational Dancing is Not Protected Speech; Plaintiff's Other "First Amendment" Arguments Also Fail ................................................................................. 5

    POINT III

        THE LICENSING REQUIREMENT IS RATIONAL AND REASONABLE; PLAINTIFF'S ARGUMENT OF "IMPLAUSIBLE POST HOC RATIONALIZATIONS" IS DEMONSTRABLY BASELESS ................................................................................. 6

**Page**

POINT IV

    THE STATUTORY SCHEME REQUIRING THE LICENSING OF CABARETS IS NOT TRIGGERED BY PERFORMANCE DANCING OR THE PLAYING OF MUSIC; THIS IS NOT A QUESTION OF *NOBLESSE OBLIGE* ................................................. 8

CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**            **Pages**

Barnes v. Glen Theatre, Inc.,
   501 U.S. 560 (1991)..................................................................................... 5

Chiasson v. New York City Dept. of Consumer Affairs,
   132 Misc. 2d 640 (Sup. Ct. N.Y.Co. 1986) ................................................. 9

Chiasson v. New York City Dept. of Consumer Affairs,
   138 Misc. 2d 394 (Sup. Ct. N.Y. Co. 1988) ................................................ 9

City of Dallas v. Stanglin,
   490 U.S. 19 (1989)....................................................................................... 5

Craig v. Boren,
   429 U.S. 190 (1976)................................................................................. 3-4

Festa v. New York City of Dept. of Consumer Affairs,
   12 Misc. 3d 466 (Sup. Ct. N.Y. Co. 2006),
   aff'd in part and modified in part, 37 A.D.3d 343 (1st Dept.)
   appeal dismissed, 9 N.Y.3d 858 (2007) ...................................................... 7

I.N.S. v. Chada,
   462 U.S. 919 (1983)..................................................................................... 8

Lawrence v. Texas,
   539 U.S. 558 (2003)..................................................................................... 5

Loper v. New York City Police Dept.,
   999 F.2d 699 (2d Cir. 1993)........................................................................ 6

McCullen v. Coakley,
   134 S.Ct. 2518 (2014) ................................................................................. 6

Peek-A-Boo Lounge v. Manatee County,
   337 F.3d 1251 (11th Cir. 2003) ................................................................... 8

Texas v. Johnson,
   491 U.S. 397 (1989)..................................................................................... 6

Turner Broadcasting System, Inc. v. FCC,
   520 U.S. 180 (1997)..................................................................................... 6

**Page**

United States v. O'Brien,
  391 U.S. 367 (1968) ............................................................................................... 5,6

United States v. Stevens,
  559 U.S. 460 (2010) ............................................................................................... 9-10

White River Amusement Pub v. Town of Hartford,
  481 F.3d 163 (2d Cir. 2007) ................................................................................... 8

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(c) ..................................................................................................... 1

## Preliminary Statement

Defendant the City of New York (the "City") submits this reply memorandum of law in further support of its cross-motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings.

Rather than address head on the legal arguments upon which the City's cross-motion for judgment on the pleadings is based, plaintiff Muchmore's Café, LLC ("plaintiff" or "Muchmore's") essentially argues hyperbole. When not arguing hyperbole, plaintiff either misstates or mischaracterizes the City's arguments or, contrary to the legal parameters and standards for judgment on the pleadings, goes well beyond the claims and allegations set forth in the amended complaint. As well, notwithstanding the clear statement of the Supreme Court that recreational dancing is not protected expression, plaintiff repeatedly argues that it is. In fact, almost all of plaintiff's opposition (and its challenge herein to the City's licensing requirement for eating and drinking establishments with dancing) is essentially based on the premise that recreational dancing falls outside of the Supreme Court's holding and is a form of expression protected by the First Amendment. From this incorrect and baseless statement of the law, plaintiff launches other irrelevant arguments using First Amendment "language", e.g., strict scrutiny, intermediate scrutiny, and narrowly tailored. Plaintiff's attempt to buttress its opposition by linking music (which is protected expression) with recreational dance (which is not) is understandable, but at the same time highlights how plaintiff repeatedly blurs the legal issues framed by the language in its own amended complaint. Contrary to plaintiff's arguments, this is a "recreational dance" case, not a "music" case.

Tellingly, other than a brief reference in its "Introduction," plaintiff does not even attempt to address the legal arguments raised in the City's cross-motion regarding plaintiff's

"Equal Protection" claim which is based on the allegation that the statutory and regulatory scheme pertaining to cabarets has a "racially discriminatory impact" because "genres of music which are primarily performed by minority musicians, such as hip hop, salsa or merengue, are effectively rendered unlawful ... while genres of music that are primarily performed by which musicians, such as classical rock or opera, are not similarly impacted." Am. Compl. ¶20. Thus, other than the conclusory statement that there is a "disparate impact" (Pl's Memo in Opp. at 2), plaintiff never addresses the City's legal argument that the articulated basis of its "Equal Protection" claim is not plausible. In a similar fashion, plaintiff does not address any of the City's legal arguments demonstrating that the term "dancing" in the definition of cabaret is not unconstitutionally vague or overbroad.

      As to the remainder of the opposing memorandum, as explained hereinafter, plaintiff either misunderstands the law or misapplies it to the claims in the amended complaint. For example, the City's standing argument is based on plaintiff's lack of standing to assert claims of others (e.g., musicians and patrons), not of plaintiff's lack of standing to assert claims on its own behalf. Yet, plaintiff only discusses its own "standing," thus missing the entire point of the City's standing point. Also, plaintiff never uses the words "substantive due process" or even "due process" in its point that starts out citing the Fourteenth Amendment and the police power (Point V), yet this section presumably is aimed at the City's substantive due process argument. Here, plaintiff merely states without support that the Court should not give credence to the City's "generalized statements", and ignores the specific arguments made by the City, which include specific language in the City Planning Commission Report, regarding eating and drinking establishments with dancing.

      Lastly, plaintiff's citation to an article in the Village Voice in support of its

contention that the statutory scheme is "one of the silliest laws on the books," only serves to highlight the lack of legal support that plaintiff presents to this Court in its attempt to oppose the City's cross-motion. For these reasons, and the reasons set forth hereinafter, the City's cross-motion for judgment on the pleadings should be granted.

## ARGUMENT
### POINT I
### THE CITY DID NOT ARGUE THAT PLAINTIFF LACKS STANDING TO ASSERT CLAIMS ON ITS OWN BEHALF; IT LACKS STANDING TO ASSERT CLAIMS OF OTHERS

Plaintiff's opposition to the City's standing argument misses the point entirely. The City's standing argument was aimed at plaintiff's assertion of claims on behalf of musicians that perform at Muchmore's, musicians and dancers that would be permitted to perform at Muchmore's "but for the Cabaret Law" and customers of Muchmore's. Am. Compl. second ¶46 and ¶47. The City does not dispute that plaintiff has standing to assert a claim on its own behalf, rather the City contends that plaintiff lacks standing to assert the claims of others.

Notwithstanding the clarity of the City's standing point, plaintiff's opposition merely lays out general principles of standing which are irrelevant vis-à-vis the City's cross-motion. Plaintiff's citation to cases "in the First Amendment arena" and its reference to "free speech" (Pl's Memo in Opp. at 3) are also irrelevant as the claims in this case are not "free speech" or First Amendment claims. As well, there is no claim that the City is "suppressing disfavored speech" or "dislike[s] speakers." Id. Plaintiff's reliance on Craig v. Boren, 429 U.S. 190, 195 (1976), for the proposition that "a tavern has standing to assert the constitutional rights of its patrons," is misplaced. In Craig, the statutes were explicitly gender-based and the Court stated in the first instance that the challenged statutes "prohibit[ed] the sale of 'nonintoxicating' 3.2% beer to males under the age of 21 and to females under the age of 18. The question to be

decided [was] whether such a gender-based differential constitute[d] a denial to males 18-20 years of age of the equal protection of the laws in violation of the Fourteenth Amendment." Id. at 192. In addition, unlike here, the issue of standing was never raised below as the state always "presumed" standing. Id. at 193. Moreover, unlike a statute that is explicitly gender-based, thus calling into play the Equal Protection clause, it cannot be disputed that there is no First Amendment right of the patrons of Muchmore's to recreationally dance.

The five affidavits submitted by plaintiff in an apparent attempt to bolster its position that it has standing to raise the claims of others also fail to rebut the City's argument. First, none of the "facts" in these affidavits impact the legal basis of the City's argument on standing. Indeed, plaintiff itself concedes that "these Affidavits are not relied upon in Plaintiff's Motion for Judgment on the Pleadings" but are used purportedly to show that the alleged "harms addressed in Plaintiff's papers are not merely hypothetical, and they are relevant to the City's efforts to avoid scrutiny of the substantive issues on standing grounds." Pl's Memo in Opp. at 4. Second, insofar as the affidavits are made by a "professional musician," the founder of an organization that organizes "performances at spaces around the City," an organizer of a "stand up comedy show," and a "debate and lecture series," they are irrelevant to the issue in this case. Another affiant is a self-proclaimed recreational dancer who has also "produced ... dance events...." None of these "facts" bestows legal standing on plaintiff to raise any claims other than those raised on its own behalf, nor, as plaintiff concedes, are they relevant in opposing other grounds set forth in the City's cross-motion.

## POINT II
## THERE IS NO FIRST AMENDMENT PROTECTED RIGHT TO RECREATIONALLY DANCE

A.  **Recreational Dancing Is Not Expression Constitutionally Protected By The First Amendment**

Notwithstanding the explicit language of the Supreme Court in City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989) that "recreational dancing – is not protected by the First Amendment" and the analysis there of why it is not protected, as well as the reiteration of that exact principal in the concurring opinion of Justice Souter in Barnes v. Glen Theatre, Inc., 501 U.S. 560, 570 (1991), plaintiff continues to argue that Stanglin "does not apply to adult social dancing." Pl's Memo in Opp. at 11. The law is clear and plaintiff is wrong, as more fully set forth in Point III of the City's Memo in Support of Cross-Motion. Similarly, plaintiff's reliance on Lawrence v. Texas, 539 U.S. 558, 562 (2003) (which involved a "statute making it a crime for two persons of the same sex to engage in intimate sexual conduct") is equally misplaced. See City's Memo in Support of Cross-Motion at 14.

B.  **The O'Brien Analysis Is Inapplicable As Recreational Dancing Is Not Protected Speech; Plaintiff's Other "First Amendment" Arguments Also Fail**

Plaintiff's multi-paged attack on the cabaret licensing scheme based entirely on the analysis set forth by the Supreme Court in United States v. O'Brien, 391 U.S. 367, 377 (1968) completely misses the mark. Pl's Memo in Opp. at 7-10. The threshold to be met before undertaking that analysis is whether or not the conduct is "communicative" and "sufficient to bring into play the First Amendment" in the first place. O'Brien, 391 U.S. at 376. Only if First Amendment protected expression is implicated are the O'Brien factors applied to determine if the challenged government regulation passes constitutional muster. Here, recreational dancing is not protected expression and therefore the threshold is not met. In its argument, plaintiff skips

5

any discussion of the "threshold" requisite and then improperly jumps to what is, because of that deficiency, an irrelevant argument based on O'Brien.

Plaintiff's discussion of strict and intermediate scrutiny suffers from the same deficiency because it assumes that recreational dancing is protected expression. Plaintiff's own description of four cases regarding intermediate and strict scrutiny itself states that these cases involve "speech" or "expression."[1] Pl's Memo in Opp. at 7. Recreational dancing is not protected speech or expression and thus plaintiff's entire discussion is irrelevant. In the face of this fact, plaintiff's apparent fallback position is that "if social dancing by adults is entitled to no First Amendment protection" then the licensing requirement for cabarets "restrains vast amounts of protected expression ... most significantly, the rights of musical performers and live music venues to host musical genres of their choice." Pl's Memo in Opp. at 8. However, the fallback position also fails as the licensing requirement is triggered by eating and drinking establishments with dancing, and thus the playing of any genre of music is of no moment. Plaintiff's position also highlights its continued attempt to link the playing of music (which is protected expression) with recreational dance (which is not) in an effort to bring recreational dancing under the protection of the First Amendment and to argue that First Amendment standards such as strict and intermediate scrutiny are applicable.

### POINT III

**THE LICENSING REQUIREMENT IS RATIONAL AND REASONABLE; PLAINTIFF'S ARGUMENT OF "IMPLAUSIBLE POST HOC RATIONALIZATIONS" IS DEMONSTRABLY BASELESS**

---

[1] McCullen v. Coakley, 134 S.Ct. 2518 (2014); Turner Broadcasting System, Inc. v. FCC, 520 U.S. 180 (1997); Texas v. Johnson, 491 U.S. 397 (1989); and Loper v. New York City Police Dept., 999 F.2d 699 (2d Cir. 1993).

6

Rather than specifically addressing the basis of the City's cross-motion regarding plaintiff's substantive due process claim (to the extent the Court recognizes plaintiff pleads such a claim), plaintiff simply states that the cabaret licensing scheme is a "shameful vestige of laws used to keeps [sic] African Americans subordinated and separate even after the Civil War and the passage of the Fourteenth Amendment." Pl's Memo in Opp. at 12. In making this blanket statement, plaintiff fails to explicitly address the relevant statutes and rules, the articulated legislative intent of the licensing schemes of the Department of Consumer Affairs, or the City Planning Commission Report explaining the zoning rationale for imposing more restrictive regulations on eating and drinking establishments with dancing (City's Memo in Support of Cross-Motion at Point IV). They all outweigh plaintiff's reliance on the purported "racist history of the Cabaret Law or its impact" and are demonstrably not a "hypothetical rationale" or "fantasy" as plaintiff argues with no support (Pl's Memo in Opp. at 12). Moreover, while plaintiff states, also without support, that "establishments that permit patron dancing do not pose any special threats [to] the health or safety of their patrons or neighbors," the City Planning Commission explicitly concluded otherwise (finding more restrictive regulations on establishments with dancing were "based on sound planning principles" that would "reduce conflicts that those establishments create with nearby residential uses.") See CPC Report at 21-22. In this regard, and perhaps understandably, plaintiff makes no mention of the state court's ruling in the Festa case, finding that the zoning classification of eating and drinking establishments with dancing was "a reasonable exercise of the police power and [it bears] a substantial relationship to the health, safety and general welfare of New Yorkers." Festa v. New York City of Dept. of Consumer Affairs, 12 Misc. 3d 466, 483 (Sup. Ct. N.Y. Co. 2006), aff'd in part and modified in part, 37 A.D.3d 343 (1st Dep't), appeal dismissed, 9 N.Y.3d 858 (2007).

In addition, plaintiff's opposition is completely silent on the legal presumption of the validity of the licensing statute. I.N.S. v. Chada, 464 U.S. 919, 944 (1983) and other cases cited in the City's Memo in Support of Cross-Motion at 16. Moreover, plaintiff's reliance on White River Amusement Pub v. Town of Hartford, 481 F.3d 163 (2d Cir. 2007) and Peek-A-Boo Lounge v. Manatee County, 337 F.3d 1251 (11th Cir. 2003) is also misplaced as both cases involved protected expression (adult entertainment establishments featuring nude and semi-nude dancing), which is not the case here.

### POINT IV

**THE STATUTORY SCHEME REQUIRING THE LICENSING OF CABARETS IS NOT TRIGGERED BY PERFORMANCE DANCING OR THE PLAYING OF MUSIC; THIS IS NOT A QUESTION OF *NOBLESSE OBLIGE***

In its opposition papers, plaintiff argues without support that the "Cabaret Law purports to regulate vast amounts of clearly protected First Amendment expression" and further argues that "dance performers, musical performers and other performers cannot be required to rely on the City's *nobleness* [sic] *oblige*" and they cannot trust that the City will not selectively enforce the licensing scheme against them (Pl's Memo in Opp. at 5 and Point II heading).[2] Plaintiff's argument is therefore apparently based on the premise that the City chooses to "selectively enforce" the licensing scheme only against eating and drinking establishments with recreational dancing and, in a show of *noblesse oblige*, chooses not to enforce the licensing scheme against "dance performers, musical performers and other performers." Plaintiff's Point II

---

[2] Notwithstanding plaintiff's use here of the term "selective enforcement," a term usually associated with an Equal Protection claim, plaintiff does not use it here in connection with an Equal Protection claim. Rather, plaintiff uses the term in Point II of its opposing memorandum which addresses the portion of the City's cross-motion that states that the licensing requirement is not triggered by performance dancing or the playing of music.

8

heading. Contrary to this baseless argument, *noblesse oblige* has nothing to do with the City's licensing scheme or its enforcement. Rather, the licensing scheme is based on the statute as modified by the New York State court in Chiasson v. New York City Dept. of Consumer Affairs, 138 Misc. 2d 394, 398 (Sup. Ct. N.Y. Co. 1988) ("Chiasson II"), as well as the "Legislative Intent" of licensing by the Department of Consumer Affairs. Plaintiff attempts to minimize the effect of the holding of Chiasson II by describing it as the "only authority the City has pointed to for a purported narrowing interpretation by the state courts...." Pl's Memo in Opp. at 5. Notwithstanding plaintiff's description of Chiasson II, it cannot be disputed that after Chiasson I (Chiasson v. New York City Dept. of Consumer Affairs, 132 Misc. 2d 640 (Sup. Ct. N.Y. Co. 1986)) and Chiasson II, the licensing requirement is simply not triggered by the playing of certain instruments or the number of musicians playing the music, no matter what the type.

Plaintiff's description of arguments made at the pre-motion conference to the effect that the "[law] is only being applied to prevent dancing by customers" (Pl's Memo in Opp. at 5) is incorrect, as well as baseless. Nowhere in the language of either the statute or in the legislative intent of the licensing requirement is there an intent, nor can one glean such an intent, to "prevent dancing by customers." Rather, the aim is to ensure the protection of the customers and patrons by requiring the licensing of the eating and drinking establishment which is thereby subject to the Department's regulations.

Plaintiff's reliance on language from United States v. Stevens, 559 U.S. 460 (2010) in support of its *noblesse oblige* argument is misplaced as plaintiff assumes, in the first instance, that the First Amendment is implicated by the licensing requirement. In Stevens, the challenged federal statute "criminalize[d] the commercial creation, sale, or possession of certain depictions of animal cruelty." Stevens, 559 U.S. at 464. The Court started its analysis by stating

flatly it "disagree[ed]" with the "Government's primary submission ... that [the challenged statute] necessarily complies with the Constitution because the banned depictions of animal cruelty, as a class, are categorically unprotected by the First Amendment." Id. at 468. The Court found that the statute "explicitly regulates expression based on content" and as such was "presumptively invalid." Id. This is simply not the case with the licensing requirement for eating and drinking establishments with dancing. Moreover, here, the licensing requirement, as judicially modified, together with the articulated legislative intent to protect consumers, cannot be said to "sweep in too much protected expression" (Pl's Memo in Opp. at 6) as did the law in Stevens since it fails to implicate protected expression in the first instance. For all these reasons, the Court should reject plaintiff's argument that the City exercises *noblesse oblige* and selectively enforces the statutory and regulatory scheme.

## CONCLUSION

For all these reasons, as a matter of law, the City's cross-motion for judgment on the pleadings should be granted and the amended complaint dismissed in its entirety.

Dated:  New York, New York
        June 4, 2015

ZACHARY W. CARTER
Corporation Counsel of the City of New York
Attorney for the Defendant
100 Church Street, Room 5-162
New York, New York 10007
(212) 356-2188

By: *Ave Maria Brennan*
AVE MARIA BRENNAN
Assistant Corporation Counsel

10