UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MUCHMORE'S CAFÉ, LLC,<br><br>                            Plaintiff,<br><br>     v.<br><br>THE CITY OF NEW YORK,<br><br>                            Defendant. | Civ. Action No.: 14-cv-05668 (RRM) |

### AFFIRMATION OF JERRY S. GOLDMAN, ESQ. IN SUPPORT OF MOTION FOR LEAVE TO APPEAR AS *AMICI CURIAE*

       I submit this Affirmation in support of the Motion for Leave to Appear as *Amici Curiae* filed herewith by Ali Coleman, Luis Vargas, Megha Kalia, Natasha Blank and Tamara Burstein.

       1.     I am a shareholder in the law firm of Anderson Kill P.C., attorneys for *amici curiae* Ali Coleman, Luis Vargas, Megha Kalia, Natasha Blank and Tamara Burstein. I make this affirmation in support of *amici curiae*'s Motion for Leave to Appear as *Amici Curiae* and file the accompanying proposed Memorandum of Law.

       2.     *Amici* are social dancers who participate in an eclectic array of musical genres, each of which inherently involves social dance.

       3.     Luis Vargas, a.k.a. Loftkidluis, and Ali Coleman are leaders of the New York City House Coalition, a group of more than 500 individuals and organizations devoted to furthering house music in New York City.

4.  Natasha Blank creates music for a biweekly event called "The Get Down," a "happy hour dance party" starting at 7 p.m and hosted in establishments subject to the Cabaret Law. The Get Down is designed to "bring together people from across classes and cultures."

5.  Megha Kalia leads the NYC Bhangra Dance company, a group which performs around the City. Bhangra music hails from the Punjab state of India, and is based on a drum called the dohl. Bhangra musicians use the dohl to express a wide range of different emotions, most notably a desire to improve one's life and mood on a day-to-day basis.

6.  Tamara Burstein has made performance dance her full time work. She is a certified teacher of the 5Rhythms movement meditation practice who shares her knowledge at 5Rhythms workshops across the world.

7.  Dance is defined as "the *art* of moving the body in a rhythmical way, usually to music, to express an *emotion* or *idea*, to *narrate* a story, or simply to take delight in the movement itself." *Miller v. Civil City of S. Bend*, 904 F.2d 1081, 1085 (7th Cir. 1990) (Posner, J., concurring) *rev'd sub nom. Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991) (emphasis added) (quotations and citations omitted). Based on the City of New York's Cabaret Law, which bans social dance in thousands of New York City public establishments, business owners are disinclined to hire musicians who perform musical genres that inherently involve dance.

8.  *Amici* believe that social dance is, by itself, protected expression under the First Amendment, for all of the reasons set forth by Plaintiff Muchmore's Café, LLC, in its submissions in this action.

9.  *Amici* contend that even if the Court refuses to recognize that social dance is, by itself, protected expression under the First Amendment, the Court cannot reasonably

dispute that social dance is an inherent nonspeech element of protected musical speech. This argument is in consonance with empirical evidence demonstrating that social dance is a mode of expression that communicates non-verbal speech.

10.     *Amici* argue that as an element of protected musical speech, social dance is subject to the intermediate scrutiny framework outlined by the United States Supreme Court in *United States v. O'Brien*, 391 U.S. 367 (1968). Social dance of the type banned by the Cabaret Law fails to meet at least two of the four *O'Brien* elements. Therefore, the government's interest in restricting social dance of the type banned under the Cabaret Law does not survive intermediate scrutiny. By incentivizing business owners not to book musicians from genres that inherently involve dance, the City infringes the rights of those musicians under the First Amendment to the Constitution of the United States.

11.     District Courts have broad discretion to permit the appearance of *amicus curiae*. *Jamaica Hosp. Med. Ctr., Inc. v. United Health Grp.*, 584 F. Supp. 2d 489, 497 (E.D.N.Y. 2008) (citation omitted). Courts may exercise their discretion to grant motions for leave for *amicus curiae* "'when the *amicus* has unique information or perspective that can help the [C]ourt beyond the help that the lawyers for the parties are able to provide.'" *C & A Carbone, Inc. v. County of Rockland, NY*, 2014 WL 1202699, at *4 (S.D.N.Y. 2014) (alteration in original) (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997)).

12.     *Amici* will provide the Court with a unique perspective on the effects of the Cabaret Law on musical expression. Whereas Plaintiff is a business owner, *amici* represent the interests of musicians from genres that rely on social dance, and of the social dancers themselves. Unlike Plaintiff, *amici* offer the Court firsthand experience with the effect of dance

on various musical genres, and the deleterious effect of the Cabaret Law on those genres and the people who dance to them.

Dated: June 9, 2015

_____
Jerry S. Goldman